IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
July 11, 2001 Session

## WARREN RESTORATION COMPANY, LLC. v. NORTHGATE SHOPPING CENTER, ET AL. v. STATE AUTO INSURANCE COMPANIES

### Direct Appeal from the Circuit Court for Warren County
No. 9674    Charles D. Haston, Judge

### No. M2000-02402-COA-R3-CV - Filed September 27, 2001

This is a dispute regarding the valuation of a strip mall for purposes of determining the applicability of a co-insurance penalty clause in Northgate Shopping Center's casualty insurance policy. In a bench trial, the trial court found the witness for Northgate to be more credible than the witness for State Auto Insurance Companies, and found the replacement cost of the building to be $3,068,000. Since the building was insured for $3,100,000, the co-insurance penalty did not apply. The trial court awarded Northgate judgment of $73,637.56, less a $1,000 deductible. This judgment included prejudgment interest of $16,107.00 assessed against Northgate and awarded to Plaintiff Warren Restoration, which had repaired areas of the mall damaged by fire. On appeal, State Auto challenges the trial court's acceptance of the valuation as determined by witnesses for Northgate, contends that the co-insurance penalty clause is applicable, and challenges the award of prejudgment interest. For the reasons set forth below, we affirm the trial court in all respects.

### Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed; and Remanded

DAVID R. FARMER, J., delivered the opinion of the court, in which W. FRANK CRAWFORD, P.J., W.S., and ALAN E. HIGHERS, J., joined.

Michael P. Mills, Nashville, Tennessee, for the appellant, State Auto Insurance Companies.

Larry B. Stanley, McMinnville, Tennessee, for the appellee, Northgate Shopping Center, Harold Martin and Joe Shelton, d/b/a Northgate Shopping Center, and Harold Martin, individually and Joe Shelton, individually.

### OPINION

Warren Restoration Company initiated these proceedings in February of 1998, when it filed a complaint against Northgate Shopping Center, Harold Martin and Joe Shelton, doing business as

Northgate Shopping Center, and Harold Martin, individually and Joe Shelton, individually,[1] for breach of contract. Warren Restoration had completed repairs amounting to $235,544.00 for damage to Northgate caused by a fire in September of 1997. It had received payment from State Auto, Northgate's casualty insurance carrier, for $178,013.44, leaving a balance of $57,530.56. The trial court awarded judgment of $57,530.56, plus prejudgment interest of $16,107.00 to Warren Restoration. Northgate, in turn, sued State Auto Insurance Companies, seeking a judgment to cover all losses from the fire. The trial court awarded Northgate $72,637.56, which includes the balance due Warren Restoration less a $1,000.00 deductible, plus the prejudgment interest award of $16,107.00.

Major contentions at trial were the value of the Northgate Shopping Center at the time of the fire and the applicability of a co-insurance penalty clause in Northgate's casualty insurance policy with State Auto. According to this clause, State Auto would not cover the full amount of any loss if the value of the property at the time of the loss, multiplied by the co-insurance percentage shown for the property, was greater than the limit of insurance. The co-insurance penalty amount in Northgate's policy was 100%. Thus in order to recover the full amount for any loss, the property had to have been insured for 100% of its value at the time of the loss. If the insurance amount was less than the total value, then State Auto would be responsible only for the amount of loss less a percentage equal to the percentage deficiency in valuation.

Northgate was insured for $3,100,000.00 for 118,000 square feet. Loss due to fire damage was $235,544.00. The parties each sought independent valuations of the shopping center for the purpose of determining its replacement value. State Auto hired Mr. David Horton, a licensed appraiser based in Jackson, Tennessee. Mr. Horton determined the replacement cost to be $4,088,068.00 Based on this appraisal, State Auto determined that a co-insurance penalty of 24% applied. As a result, State Auto contends that it is responsible for only 76% of the $235,544.00 fire damage to Northgate, or $178,013.44. This amount was paid by State Auto to Warren Restoration. Northgate hired Mr. Keith Bouldin, a local contractor, who determined the replacement value to be $3,068,000.00, which is within the insured value of $3,100,000.00. If Mr. Bouldin's determination is correct, the co-insurance penalty would not apply and State Auto is responsible for 100% of the damage, or $235,544.00, less a $1,000.00 deductible.

After examining the evidence, including testimony from both parties, the trial court found Mr. Bouldin's determination to be more credible than Mr. Horton's and awarded judgment to Northgate. State Auto now appeals this finding. State Auto also appeals the inclusion of prejudgment interest in the award to Northgate.

The issues raised on appeal, as we perceive them, are:

1. Did the trial court err in finding Mr. Bouldin's testimony more credible than Mr. Horton's?

---

[1] Northgate Shopping Center is a partnership composed of Harold Martin and Joe Shelton, partners.

2.  Did the trial court err by not applying the co-insurance penalty?

3.  Did the trial court err in including the award of prejudgment interest to Warren Restoration in its judgment for Northgate against State Auto?

### *Standard of Review*

In a nonjury case, the standard of review is *de novo* upon the record.  *See Wright v. City of Knoxville*, 898 S.W.2d 177, 181 (Tenn. 1995).  There is a presumption of correctness as to the trial court's findings, unless the preponderance of the evidence is otherwise.  Tenn. R. App. P. 13(d).

### *Witness Credibility*

We first address the issue of witness credibility.  The factual findings of the trial court which rest on determinations of credibility must be given great weight.  *See Elrod v. J.C. Penney Life Ins. Co.*, No. M1999-02195-COA-R3-CV, 2000 WL 798651 (Tenn. Ct. App. Jun. 22, 2000) (*no perm. app. filed*) (citing *Randolph v. Randolph*, 937 S.W.2d 815, 819 (Tenn. 1996)).  Absent clear and convincing evidence to the contrary, a trial judge's assessment of the credibility of a witness will not be reevaluated by the appellate courts.  *See Wells v. Tennessee Bd. of Regents*, 9 S.W.3d 779, 783 (Tenn. 1999).

The differences between the two valuations of the replacement cost of Northgate Shopping Center primarily were based on three factors: the measurement of square footage, the replacement cost per square foot, and the question of whether the value of fixtures and tenant improvements should be included.  Mr. Horton measured the shopping center and based his valuation on 128,100 square feet.  At trial, Mr. Horton testified that he measured the whole structure and the record includes a diagram of the shopping center drawn by him.  This diagram includes loading areas and canopied walk-ways, which measure approximately 10,000 square feet.  However, these areas are excluded by the insurance policy,[2] and therefore should not be included in the valuation.  After reviewing the testimony and the diagram submitted by Mr. Horton, we cannot find clear and convincing evidence that the trial court erred by adopting the 118,000 square feet measurement as recorded in the insurance policy.

The differences in the valuation of the replacement cost of the shopping center also result from differing estimates of the costs per square foot.  Mr. Horton testified that it would cost about $31.00 per square foot to replace Northgate.  Mr. Horton utilized the Marshall and Swift Evaluation

---

[2]Section A.2. reads, in pertinent part:

> Covered Property does not include:
>
> . . . .
>
> (d) Bridges, roadways, walks, patios or other paved surfaces[.]

-3-

Service to determine this cost. Applying Mr. Horton's measurement of 128,000 square feet, this results in a replacement cost of $4,088,068.

Mr. Bouldin, a local builder, testified that he could replace the structure for $26.00 per square foot. Mr. Bouldin's cost was based on amounts he previously had charged for construction of buildings attached to the mall and other local retail structures. Mr. Harold Martin, one of the owners of Northgate, testified that the cost of constructing a building in the shopping center five years before the fire was $15.00 per square foot. Mr. Martin further testified that the most expensive building in the mall was a drug store, which required special store rooms. He testified that the drug store had been built four years before the fire at a cost of $21.00 per square foot. Again, we can not find clear and convincing evidence of error in the trial court's finding that a cost of $26.00 per square foot, as determined by a local builder and supported by previous construction costs, is more credible than one based on a national evaluation service.

Third, Mr. Bouldin testified that his replacement cost valuation was for the basic structure. Mr. Horton testified that his valuation was for bringing Northgate back to the condition it was in before the fire, including fixtures and betterments or improvements made by tenants of the retail space. The inclusion of such fixtures and betterments obviously would increase the total replacement value.

State Auto argues that such fixtures should be included in the replacement cost valuation. Section A.1. of the casualty policy states that Covered Property includes fixtures. Historically, fixtures have been defined in Tennessee as chattels which "are so attached to the freehold that, from the intention of the parties and the uses to which they are put, they are presumed to be permanently annexed, or a removal thereof would cause serious injury to the freehold." *Hickman v. Booth*, 173 S.W. 438 (Tenn. 1915). However, an exception exists for trade fixtures, which are not considered to be part of the freehold. *See Devore v. Synergy Gas Corp.*, No. 02A01-9309-CH-00210, 1994 WL 618610 (Tenn. Ct. App. Nov. 9, 1994) (*no perm. app. filed*) (citing *Pillow v. Love*, 5 Hayw., 109). The question of whether a fixture constitutes a trade fixture, and is therefore removable and not a part of the freehold, is generally a question of intent. See 36A C.J.S. *Fixtures* § 38. Thus while some improvements or betterments made by tenants might be considered fixtures and covered by Northgate's casualty policy, others would not become part of the freehold and would not be covered as fixtures.

Further, Section A.5. of the policy includes additions, alterations and repairs *if not covered by other insurance*. (Emphasis added.) Section A.2. specifically excludes property covered under other insurance. Mr. Martin testified that all the owners of Northgate provided was the building itself. Mr. Bouldin likewise testified that construction of these individual areas consisted of constructing "vanilla boxes," with tenants providing their own mill and interior finish work. Mr. Martin further testified that tenants of the retail area of Northgate were required to insure their interior mill work separately. The record does not contain clear and convincing evidence that the trial court erred when it found Mr. Bouldin and Mr. Martin more credible on this issue.

*Application of the Co-insurance Penalty*

Since we affirm the trial court's finding the Mr. Bouldin was more credible than Mr. Horton on the issue of the valuation of Northgate Shopping Center, we affirm the finding that the co-insurance penalty is not applicable.

*Award of Prejudgment Interest*

A prejudgment interest award is within the sound discretion of the trial court. ***Myint v. Allstate Ins. Co.***, 970 S.W.2d 920, 927 (Tenn. 1998). An abuse of discretion occurs when the court's decision has no basis in either law or fact and is therefore either arbitrary, illogical, or unconscionable. ***See State v. Brown and Williamson Tobacco Corp.***, 18 S.W.3d 186, 191 (Tenn. 2000). The trial court's decision will not be disturbed by an appellate court unless a manifest and palpable abuse of discretion is revealed by the record. ***See Myint***, 970 S.W.2d at 927. This standard requires appellate courts to give considerable deference to the trial court's decision to award prejudgment interest. ***See id***.

State Auto submits that the trial court abused its discretion by awarding prejudgment interest in this case because the liability of the debt legitimately was in dispute. Although the Tennessee Supreme Court held in ***Myint*** that prejudgment interest is allowable when the amount of the obligation is certain and not disputed on reasonable grounds, this is not the only basis on which prejudgment interest may be awarded. ***See id***. In ***Myint***, the court noted that in a majority of cases, strict construction of such criteria would prohibit the recovery of prejudgment interest. ***See id***. Only liquidated claims, for which prejudgment interest may be recovered as a matter of right under Tenn. Code Ann. § 47-14-109, can be considered certain and indisputable amounts. ***See id***. The court further noted that defendants who could not articulate a good reason for disputing an obligation would rarely survive summary judgment. ***See id***.

The court in ***Myint*** held that the principles of equity are foremost in the decision to award prejudgment interest. ***See id***. The decision must be one of fairness under the circumstances. ***See id***. The purpose of awarding prejudgment interest is to compensate the plaintiff, not to penalize the defendant. ***See id***. (citing ***Mitchell v. Mitchell***, 876 S.W.2d 830, 832 (Tenn. 1994)).

In ***Myint***, the Tennessee Supreme Court reinstated a prejudgment interest award granted by the trial court. The court held that, although the Myint's claim against defendant Allstate Insurance was disputed on reasonable grounds, the amount of recovery was not uncertain for the purposes of awarding prejudgment interest. ***See id***. at 928. The court held that the uncertainty of an obligation, either in terms of existence or amount, does not require that prejudgment interest be denied. ***Id***. If the decision is otherwise equitable, the grant of such interest is not automatically an abuse of discretion. ***Id***. The court held, "[t]he certainty of the plaintiff's claim is but one of many nondispositive facts to consider when deciding whether prejudgment interest is, as a matter of law, equitable under the circumstances." ***Id.***

In August of 2000, Northgate was ordered to pay the balance of $57,530.56 and prejudgment interest of $16,107.00 on this balance to Warren Restoration for work Warren Restoration had completed in September of 1997. The trial court further found State Auto liable to Northgate for this balance, less a $1,000 deductible, and included the prejudgment interest award in its judgment for Northgate. We can not find that this award of prejudgment interest is either arbitrary, illogical or unconscionable in light of the deferential standard articulated in *Myint*. Northgate has incurred a loss of a certain and definite amount. This loss stems from its dispute with State Auto over the valuation of the shopping center. Finding State Auto liable for the total amount of damage to Northgate, the same prejudgment interest could have been fairly assessed against State Auto had Northgate paid Warren Restoration in 1997 and then filed its complaint against State Auto. In either instance, the prejudgment interest award compensates the plaintiff Northgate for its loss. Such compensation is not unfair in light of the articulated circumstances of this case.

Inasmuch as the record contains no clear and convincing evidence to contradict the trial court's determination of the credibility of the witnesses in this case, and inasmuch as we find no manifest or palpable abuse of discretion in the award of prejudgment interest, the judgment of the trial court is affirmed in all respects. Costs of this appeal are taxed to the Appellant, State Auto Insurance Companies, and its surety.

 

 

_____
DAVID R. FARMER, JUDGE