**SOUTHWESTERN LIFE INSURANCE COMPANY, Plaintiff–Appellee,**

v.

**Scott A. MERCER, Jeffrey L. Mercer, Don. G. Mercer, and Dennis R. Mercer, Defendants–Appellants.**

No. 02–6500.

United States Court of Appeals, Sixth Circuit.

May 18, 2004.

Martin B. Bailey, Wagner, Myers & Sanger, Knoxville, TN, for Plaintiff–Appellee.

Louis W. Oliver, III, Hendersonville, TN, for Defendants–Appellants.

Before BATCHELDER and GIBBONS, Circuit Judges; and BEER, District Judge.*

GIBBONS, Circuit Judge.

Defendants-appellants Scott A. Mercer, Jeffrey L. Mercer, Dennis R. Mercer, and Don. G. Mercer were the owners of a "Concept 90+" life insurance policy that had been issued on the life of their mother, Edith Mercer, by a predecessor of plaintiff-appellee Southwestern Life Insurance

---

* The Honorable Peter Beer, United States District Judge for the Eastern District of Louisi- ana, sitting by designation.

Company ("Southwestern"). The Mercers later voluntarily surrendered this policy in exchange for a refund. Pursuant to a settlement agreement entered into in a class action lawsuit involving the Concept 90+ policy, Southwestern offered the Mercers the option of reinstatement if they agreed to return the refund and to pay an additional amount covering the cost of insurance between the date of surrender and the date of reinstatement ("the shortfall"). The Mercers opted for reinstatement and were given thirty days to return the refunded amount, but were not told how to calculate the amount of the shortfall until four days before the payment was due. Southwestern granted the Mercers an additional thirty-day extension to make their payment, but Edith Mercer died unexpectedly in a plane crash before they were able to do so. Shortly after their mother's death, the Mercers sent Southwestern the required payment, but Southwestern refused to reinstate their policy and denied their claim for a death benefit. When the Mercers persisted with their claim for reinstatement, Southwestern brought an action seeking a declaratory judgment that there had been no valid contract of insurance at the time of Edith Mercer's death and that it was not obligated to pay the Mercers a death benefit. The Mercers brought a counter-complaint alleging breach of the settlement agreement and violations of Tenn.Code Ann. § 56–7–105(a) and the Tennessee Consumer Protection Act, Tenn.Code. Ann. §§ 47–18–101 to –125 (2001) ("TCPA"). The district court concluded that Southwestern had not breached the settlement agreement and that the TCPA did not apply because a valid contract of insurance was not in place at the time of Edith Mercer's death and granted summary judgment in favor of Southwestern. We agree with the district court that Southwestern did not breach the settlement agreement, and, although

we disagree that a valid contract of insurance had to be in place in order for the TCPA to apply, we nonetheless conclude that Southwestern's handling of the claim for reinstatement was not unfair or deceptive. We therefore affirm the judgment of the district court.

## I.

On March 5, 1993, the Mercers became the owners of a Concept 90+ life insurance policy issued by Integon Life Insurance Company ("Integon") that insured the life of their mother. Integon subsequently changed its name to Security Life and Trust Company ("SLT") and later merged into Southwestern. On April 28, 1999, the Mercers entered into a Release Agreement with SLT and agreed to surrender their Concept 90+ policy in exchange for a refund of $60,662.50, or 115% of all premiums that had been paid on the policy. The agreement provides that upon tender of the refund by SLT, the insurance policy "will immediately be void and of no effect."

Subsequently, the Concept 90+ insurance policies issued by Southwestern and its predecessors became the subject of a class action lawsuit in state court in Dallas County, Texas. In the court-approved settlement agreement, the Mercers were designated as members of a class who were granted the right to reinstate their surrendered policies. The agreement also provided that Southwestern would process any applications for reinstatement in the "ordinary course" of its business. Shortly after the settlement agreement was signed, Southwestern sent the Mercers an Election Form which gave them the option of applying to reinstate their Concept 90+ insurance policy or accepting an alternative settlement death benefit.

The Mercers chose to apply to reinstate their policy by making the following election:

> YES, I want to reinstate my Concept 90 Policy identified above. I realize that this election may make me ineligible for the Settlement Death Benefit. I further realize that as prerequisites to reinstatement, I/we will have to return the cash received when I cancelled my Concept 90 Policy identified above and that the life insured under my Concept 90 Policy identified above will need to satisfy full medical underwriting.

On January 2, 2001, the Mercers received a letter from Southwestern's Vice President, Linda L. Klee, acknowledging that they had chosen to reinstate their policy and requesting that they return within thirty days both a Supplemental Application and Authorization to Obtain and Release Information and the $60,662.50 they had received upon cancellation of the policy. The letter stated that, upon receipt of the necessary documents and the required payment, Southwestern would begin reviewing their application for reinstatement.

On January 29, 2001, the Mercers met with Jimmy Reed, the agent who had sold them their Concept 90+ policy. Reed informed them that, in addition to the $60,552.50 payment, the Mercers would have to pay the shortfall—an additional payment necessary to cover the cost of insurance between the date of surrender and the date of reinstatement.

On March 16, 2001, Southwestern notified the Mercers by letter that it had approved their application. The letter reiterated Southwestern's previous request for payment of the $60,662.50 within thirty days, but it did not include the amount of the shortfall. The Mercers claim that they did not receive this letter until March 26 or 27.

Between March 26 and April 10, 2001, Jeff Mercer attempted to contact Southwestern to determine the amount of the shortfall on the policy, and he left numerous messages on Klee's voice mail. On April 12, 2001, Southwestern sent him a 43–page facsimile with illustrations demonstrating how to calculate the amount of the shortfall. That same day, Mercer asked Patricia Barnett, a supervisor at Southwestern, to provide him with the company's street address so that he could send the payment for next day delivery, but she refused to give him that address and instead gave him the address for a post office box. When Mercer explained that Federal Express would not deliver to a post office box, Barnett gave him an additional thirty-day extension to get the funds to Southwestern. Mercer received a fax confirming the extension on April 16, 2001. This fax specifically noted that the requested funds were needed to reinstate the policy.

Eight days later, Edith Mercer died in a plane crash. After her death, the Mercers sent Southwestern three checks totaling $65,969.50 and asserted a claim for death benefits. Southwestern returned the checks and refused to pay a death benefit because it could not reinstate the policy after the insured had died. When the Mercers continued to demand reinstatement of their policy, Southwestern filed an action seeking a declaratory judgment that the policy could not be reinstated after Edith Mercer's death and that it was not obligated to pay a death benefit. The Mercers filed a counter-complaint for breach of contract, violation of the TCPA, and bad faith refusal to pay insurance proceeds in violation of Tenn.Code Ann. § 56–7–105(a). The district court granted summary judgment in favor of Southwestern after concluding that (1) there was no valid contract of insurance at the time of Edith Mercer's death, (2) the surrendered

policy could not be reinstated after Edith Mercer's death, (3) Southwestern was not obligated to pay any death benefits as a result of the surrendered policy, and (4) Southwestern was not obligated "in any way to [the Mercers] for any claim arising out of or relating to the [p]olicy." The court found that Southwestern had not breached the settlement agreement and that the TCPA did not apply because a valid contract of insurance was not in place at the time of Edith Mercer's death. On appeal, the Mercers argue that Southwestern breached the settlement agreement by preventing them from complying with a condition precedent for reinstatement of their policy and that the district court erred when it found that a valid contract of insurance had to be in place in order for the TCPA to apply.

## II.

This court reviews a district court's decision granting summary judgment *de novo. EEOC v. Univ. of Detroit,* 904 F.2d 331, 334 (6th Cir.1990). Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). A dispute over a material fact is considered "genuine" if "a reasonable jury could return a verdict for the non-moving party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). In considering a motion for summary judgment, the district court must construe the evidence and draw all reasonable inferences in favor of the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986).

### A. Breach of the Settlement Agreement

 The Mercers first argue that the district court erred in concluding that Southwestern had not breached the settlement agreement. They contend that Southwestern prevented them from complying with one of the conditions precedent for reinstatement of their insurance policy. In particular, they assert that Southwestern's tactics thwarted their good faith efforts to return the premium and shortfall amounts necessary to reinstate the policy by the original deadline of April 15, 2001. The district court found that Southwestern had offered the Mercers the option of reinstatement in accordance with the provisions in the settlement agreement and that Southwestern had supplied the Mercers with the information needed to calculate the shortfall and adequate time to submit their payment.

We review a district court's interpretation of a contract *de novo* and its findings of fact for clear error. *Boyer v. Douglas Components Corp.,* 986 F.2d 999, 1003 (6th Cir.1993). In this case, the Mercers have failed to present evidence supporting their claim the Southwestern's actions thwarted their ability to comply with the conditions for reinstatement of their insurance policy or that Southwestern delayed in acting upon their application for reinstatement. Even if Southwestern did delay in providing the materials necessary to calculate the amount of the shortfall, the Mercers were informed of the full amount due as of April 12, 2001, three days before the original deadline. If, as the Mercers suggest, this was not enough time for them to send the payment to Southwestern for receipt by April 15, Southwestern granted them an additional thirty-day extension. The Mercers have offered no explanation for their delay in returning the payment after April 16, 2001, other than Jeff Mercer's deposition testimony that Southwestern in-

formed him that the policy was not "at risk" during the thirty-day extension. Yet, the record contains no evidence that Southwestern told him that the policy would be reinstated during the thirty-day extension absent receipt of their payment. Once the Mercers were informed of the amount of the shortfall, there was no reason for further delay. They have failed to produce evidence that Southwestern prevented them from meeting the prerequisites for reinstatement or that Southwestern in any other way breached the terms of the settlement agreement.

## B. Application of the TCPA

■ The Mercers next argue that the district court erred when it concluded that a valid contract of insurance had to be in place at the time of Edith Mercer's death in order for the provisions of the TCPA to apply. The TCPA prohibits any "[u]nfair or deceptive acts or practices affecting the conduct of any trade or commerce." Tenn. Code Ann. § 47–18–104(a). The statute defines "trade" or "commerce" as "advertising, offering for sale, lease or rental, or distribution of any goods, services, or property, tangible or intangible, real, personal, or mixed, and other articles, commodities, or things of value wherever situated." *Id.* § 47–18–103(11). The Mercers argue that the TCPA is applicable in this case because Southwestern's actions involved "the marketing, sale, and distribution of property within the State of Tennessee." Southwestern counters that the TCPA does not apply because it was not selling the Mercers an insurance policy when it offered reinstatement, but, rather,

simply complying with the terms of a court-approved settlement.

Jurisdiction in this case is based on diversity because the parties are from different states and the amount in controversy exceeds $75,000. 28 U.S.C. 1332(a). In reviewing a substantive question in a diversity case, the role of this court is to determine what the highest court of the state would decide on a given question. *Ackley v. Wyeth Labs., Inc.,* 919 F.2d 397, 399–400 (6th Cir.1990). Although the Tennessee Supreme Court has held that the TCPA applies to the acts and practices of insurance companies, and specifically to the initial issuance of an insurance policy, *Myint v. Allstate Ins. Co.,* 970 S.W.2d 920, 926 (Tenn.1998), Tennessee courts have not yet addressed the issue of whether the TCPA applies when an insurance company offers to reinstate a previously cancelled policy.

Nonetheless, we are persuaded that a valid contract of insurance does not have to be in place in order for the provisions of the TCPA to apply to the actions of an insurance company when it offers to reinstate a policy. The plain language of the TCPA "is broad enough to cover not only advertising and sales, but also conduct affecting the 'distribution of any ... services, or property.'" *Sparks v. Allstate Ins. Co.,* 98 F.Supp.2d 933, 937 (W.D.Tenn. 2000) (holding that the TCPA applies to the claims handling procedures of insurance companies). When Southwestern offered the Mercers the option of reinstating their insurance policy, this was conduct affecting the distribution of property, even if Southwestern made the offer pursuant to a court-ordered settlement agreement.[1]

---

1. Southwestern contends that application of the TCPA to its actions in this case would violate the Full Faith and Credit Act, 28 U.S.C. § 1738, because it cannot be held liable under the TCPA for complying with the Texas court's order in the settlement agreement that it process applications for reinstatement "in the ordinary course" of its business. This contention is without merit. Application of the TCPA to Southwestern's acts and practices in this case would not require this court to hold that Southwestern had to process ap-

*See Barfield v. Wilson,* 669 S.W.2d 91, 94 (Tenn.1984) (noting that an insured has an "absolute right to reinstatement upon complying with the policy terms and provisions" and that this right "is considered to be a substantial property right").

■ Assuming that the TCPA applies in this case, we conclude that Southwestern's handling of the Mercers' application for reinstatement was neither unfair nor deceptive. The record reveals no evidence of an attempt by Southwestern to violate the terms of the settlement agreement, to deceive the Mercers about the necessary prerequisites for reinstatement, or to otherwise act unfairly. Jeff Mercer testified that Southwestern prevented his tender of payment within the original deadline because Barnett refused to provide him with a street address, but Barnett also gave him a thirty-day extension, and Mercer has not explained his failure to submit payment promptly after the extension was granted. Mercer also testified that Southwestern led him to believe that the policy was "not at risk" when he was unable to tender the requested funds, but the April 16, 2001 letter clearly states that payment was necessary for reinstatement of the policy. No one from Southwestern ever told the Mercers that the policy on their mother's life was in force pending the receipt of this payment. While Southwestern may have told Jeff Mercer that the thirty-day extension would not present any risk to the policy's being reinstated, there is no evidence that anyone from Southwestern ever told him that it had in fact been reinstated. In short, the Mercers have not produced evidence supporting their claim that Southwestern's actions were unfair and deceptive in violation of the TCPA, and the district court did not

err when it found that Southwestern was entitled to summary judgment on this claim.

### III.

For the foregoing reasons, we affirm the judgment of the district court.

---

plications in some way other than "in the ordinary course" of its business. Southwestern could have processed an application in

the ordinary course of its business and nonetheless engaged in "unfair or deceptive acts or practices" contrary to the TCPA.