IN THE SUPREME COURT OF TENNESSEE

AT NASHVILLE

| | | |
|---|---|---|
| WIN MYINT and wife<br>PATTI K. MYINT | ) | FOR PUBLICATION |
| | ) | |
| Plaintiffs/Appellants | ) | FILED: JUNE 1, 1998 |
| | ) | |
| | ) | DAVIDSON COUNTY |
| v. | ) | |
| | ) | HON. CHRISTINA NORRIS, |
| ALLSTATE INSURANCE COMPANY | ) | Special Chancellor |
| | ) | |
| Defendant/Appellee | ) | NO. 01-S-01-9612-CH-00238 |

For Appellants:

JOSEPH H. JOHNSTON
Nashville, TN

For Appellee:

BARRY FRIEDMAN
PAIGE WALDROP MILLS
JOHN D. SCHWALB
Nashville, TN

JON L. FLEISCHAKER
Louisville, KY

For Amicus Curiae:

EDWARD K. LANCASTER
Columbia, TN
Tennessee Farmers Mutual Insurance Company

J. RICHARD LODGE
E. CLIFTON KNOWLES
Nashville, TN
State Farm Mutual Automobile Insurance
 Company

THOMAS H. PEEBLES, III
G. BRIAN JACKSON
Nashville, TN
National Association of Independent Insurers
 and The Alliance of American Insurers

JOHN KNOX WALKUP
STEPHEN C. KNIGHT
Nashville, TN
State of Tennessee

**FILED**

**June 1, 1998**

**Cecil W. Crowson**
**Appellate Court Clerk**

OPINION

JUDGMENT OF THE COURT OF APPEALS
REVERSED IN PART AND AFFIRMED IN PART                    BIRCH, J.

In this cause, the insuror refused to pay a claim under a policy of insurance. The insured contends that such refusal constitutes an "unfair or deceptive act or practice," in violation of the Consumer Protection Act, Tenn. Code Ann. §§ 47-18-101, et seq.[1] In contrast, the insuror insists that Tenn. Code Ann. § 56-7-105,[2] commonly known as the "bad faith statute," is the exclusive remedy for the bad faith denial of an insurance claim. Because Title 56, Chapters 7 and 8 of the Tennessee Code comprehensively regulates the insurance industry, the insuror insists that the acts and practices of an insurance company are never subject to the Consumer Protection Act.

---

[1]Tennessee Code Annotated § 47-18-109 (1995) provides the remedies for a violation of the Consumer Protection Act:

> (a)(1) Any person who suffers an ascertainable loss of money or property, real, personal, or mixed, . . . as a result of the use or employment by another person of an unfair or deceptive act or practice declared to be unlawful by this part, may bring an action individually to recover actual damages.
>
> . . . .
>
> (a)(3) If the court finds that the use or employment of the unfair or deceptive act or practice was a willful or knowing violation of this part, the court may award three (3) times the actual damages sustained and may provide such other relief as it considers necessary and proper.

[2]Tennessee Code Annotated § 56-7-105(a)(1989) provides:

> [I]nsurance companies . . . , in all cases when a loss occurs and they refuse to pay the loss within sixty (60) days after a demand has been made by the holder of the policy or fidelity bond on which the loss occurred, shall be liable to pay the holder of the policy or fidelity bond, in addition to the loss and interest thereon, a sum not exceeding twenty-five percent (25%) on the liability for the loss; provided, that it is made to appear to the court or jury trying the case that the refusal to pay the loss was not in good faith, and that such failure to pay inflicted additional expense, loss, or injury upon the holder of the policy . . . .

We find, for the reasons stated herein, that the acts and practices of an insurance company may, indeed, be subject to the Consumer Protection Act. We conclude, however, that the facts before us do not evince an act "affecting the conduct of any trade or commerce" such as would be subject to the Consumer Protection Act.

I

The property herein involved is a two-unit structure located at 224 Treutland Street in Nashville. The appellants, Win and Patti Myint, purchased it in 1983 and began leasing the units. Since 1989, they maintained insurance coverage on the structure with the appellee, Allstate Insurance Company, under a "landlord's package" policy. The structure was insured for its estimated market value--$61,000. In April 1991, the ground floor tenant reported water leaking from the second floor. Repairs were made, and the Myints received no further complaints.

In June 1991, Win Myint inspected the property and discovered that water leaking from the second-floor kitchen sink had extensively damaged the ceiling and walls of the ground-level unit. Win Myint then initiated the eviction process against the tenants so that he might make necessary repairs.

When one of those tenants applied for subsidized housing, the Metropolitan Development and Housing Authority investigated her housing status. In processing the application, a building codes officer inspected the property and reported several code

3

violations.  On August 5, 1991, the Myints received notice of the codes violations from the chief housing inspector of the Codes Department of the Metropolitan Government of Nashville and Davidson County.  The notice described the property as "unfit for human habitation," and a hearing was set for August 20, 1991.  The Myints failed to attend the hearing, and the property was classified as "H-6."[3]  The Myints were ordered to relocate the structure or demolish it.

On September 27, 1991, the Myints filed a claim with Allstate for the damage caused by the water, and Allstate sent an adjuster to inspect the property.  While the claim for water damage was pending, the Myints began to make repairs.  On September 30, 1991, Allstate informed them that the claim had been denied because the damage had been caused by slowly leaking water, which is excluded from coverage by the terms of the policy.

On October 1, 1991, the codes officials ordered a halt to the repair process because the Myints had not obtained the appropriate permit.  Consequently, the Myints applied for a permit, but this application was denied because the property had been previously scheduled for demolition.

---

[3]Dorsey Barnett, the Metropolitan Codes Department housing inspector who examined the property, explained that an H-6 structure is usually scheduled for demolition.  However, not all H-6 structures are ultimately demolished.  The Codes Department often lists borderline cases, such as this one, as H-6 in order to force the property owner to make the necessary repairs as soon as possible.  Should repair of an H-6 structure be denied, the owner must first appeal to the Housing Appeals Board for a variance.  The variance then entitles the owner to obtain a permit to repair the structure.

On October 18, 1991, Allstate notified the Myints that the contract of insurance would be terminated as of December 2, 1991. At trial, an Allstate employee testified that the cancellation was due to the overall poor condition of the property, as Allstate's adjuster had observed when he inspected the water damage. On October 23, 1991, a small fire in the basement of the property caused minor smoke damage; it is unclear whether the Myints notified Allstate of this occurrence. Three days later, on October 26, 1991, a second fire engulfed the property and caused substantial damage. The Myints then applied for a variance in order to obtain a building permit. The Metropolitan Board of Housing Code Appeals granted the variance, giving the Myints until September 1, 1992, to bring the property into compliance with code requirements.

On January 10, 1992, the Myints filed with Allstate "sworn statements in proof of loss" for the fire damage. Because Allstate failed to respond as of June 17, 1992, the Myints' attorney wrote Allstate demanding a decision on the claim. On June 23, 1992, Allstate denied the claim, citing two policy violations: (1) the Myints intentionally set fire to the property for the purpose of collecting the insurance proceeds; and (2) the fire damage was the result of an increase in hazard created by the Myints' failure to maintain the property. While the parties stipulated that both fires had been intentionally set, the Myints have always denied any involvement in the setting of the fire.

The Myints subsequently filed suit against Allstate for breach of the insurance policy, violation of the bad faith statute,

and violation of the Consumer Protection Act.[4]  Prior to trial, the trial court dismissed the claim for relief under the Consumer Protection Act.  The jury found Allstate liable under the terms of the insurance policy and awarded the Myints $45,000 in damages, subject to a $250 deductible.  The jury's award reflected the decrease in the market value of the residence, from approximately $50,000 to $5,000, caused by the fire.  The jury further determined that Allstate did not deny the claim in bad faith; thus, the Myints were not entitled to additional damages under the bad faith statute.  After the jury verdict, the trial court awarded $13,106 in prejudgment interest to the Myints, pursuant to Tenn. Code Ann. § 47-14-123 (1988).

The Court of Appeals reversed the trial court's prejudgment interest ruling and affirmed the judgment in all other respects.  The Court of Appeals reasoned that the Consumer Protection Act is not applicable because the insurer's bad faith statute, Tenn. Code Ann. § 56-7-105, provides the exclusive remedy for the bad faith refusal to pay an insurance claim.  The Myints now appeal that determination and also challenge the Court of Appeals' reversal of the trial court's award of prejudgment interest.  Pursuant to Tenn. R. App. P. 11, we granted the Myints' application to address both issues.[5]

_____

[4]The Myints also sued the Metropolitan Government, seeking an injunction to prevent demolition of the property.  The suit against the Metropolitan Government was subsequently dismissed for failure to state a claim upon which relief could be granted.

[5]With respect to the issue of whether the Consumer Protection Act may apply to an insurance company's decision to deny a claim, the following parties were granted leave to file briefs as amicus curiae:  the Attorney General of the State of Tennessee, State Farm Automobile Mutual Insurance Company, Tennessee Farmers Mutual

II

Allstate and the several insurance companies which filed amicus briefs argue that the Consumer Protection Act does not apply to the insurance industry because the comprehensive insurance regulations in Title 56, Chapters 7 and 8 of the Tennessee Code specifically address unfair or deceptive acts or practices on the part of the insurance industry. Each asserts that Tenn. Code Ann. § 56-7-105, which provides a penalty for an insuror's bad faith refusal to pay a claim, is the exclusive remedy for such refusal. The Myints and the Attorney General, on the other hand, urge that the purposes of the insurance regulations and the Consumer Protection Act are distinct, each with different standards of liability, and each with different remedies. They insist that under appropriate circumstances, both may apply. We note that while this Court has never explicitly held the Tennessee Consumer Protection Act applicable to insurance companies, we implicitly did so in Morris v. Mack's Used Cars, 824 S.W.2d 538, 539-40 (Tenn. 1992). In Morris, we cited with approval to Skinner v. Steele, 730 S.W.2d 335 (Tenn. App. 1987), a case in which the Court of Appeals expressly held that the insurance industry was not exempt from the Act.

Construction of a statute is a question of law which we review de novo, with no presumption of correctness. Roseman v. Roseman, 890 S.W.2d 27, 29 (Tenn. 1994). The role of the Court in construing statutes is to ascertain and give effect to legislative

_____

Insurance Company Association, National Association of Independent Insurers, and the Alliance of American Insurers.

intent. <u>Wilson v. Johnson County</u>, 879 S.W.2d 807, 809 (Tenn. 1994). Legislative intent is to be ascertained whenever possible from the natural and ordinary meaning of the language used, without forced or subtle construction that would limit or extend the meaning of the language. <u>Carson Creek Vacation Resorts, Inc. v. Department of Revenue</u>, 865 S.W.2d 1, 2 (Tenn. 1993). Here, the language of the statutes at issue provide ample evidence that the legislature did not intend to exclude insurance companies from the purview of the Consumer Protection Act.

First, we examine the insurance regulations which Allstate and several <u>amicae</u> insist are the exclusive means of sanctioning insurance companies for unfair or deceptive acts or practices. The Insurance Trade Practices Act, Tenn. Code Ann. §§ 56-8-101 <u>et seq.</u>, was passed in 1981 for the purpose of

> regulat[ing] trade practices in the business of insurance . . . by defining, or providing for the determination of, all such practices in this state which constitute unfair methods of competition or unfair or deceptive acts or practices and by prohibiting the trade practices so defined or determined.

Tenn. Code Ann. § 56-8-101 (1994). Section 56-8-104 specifically lists the acts which constitute unfair competition or deceptive acts, including unfair claim settlement practices. Tenn. Code Ann. § 56-8-104(8) (1994). The Insurance Trade Practices Act gives the Commissioner of Commerce and Insurance broad authority to investigate violations of the Act, issue cease and desist orders, impose civil penalties, and order suspension or revocation of

8

insurance licenses. Tenn. Code Ann. §§ 56-8-107 & -109(a) (1994). No private right of action may be maintained under the Act. Tenn. Code Ann. § 56-8-104(8).

While the Insurance Trade Practices Act focuses on the comprehensive regulation of insurance industry practices, the bad faith statute, Tenn. Code Ann. § 56-7-105, focuses on specific instances of bad faith. Enacted in 1901, the bad faith statute provides a private right of action to an individual injured by an insurance company's refusal to pay a claim, if the refusal "was not in good faith."

We find nothing in either the Insurance Trade Practices Act or the bad faith statute which limits an insured's remedies to those provided therein. Allstate argues that Tenn. Code Ann. § 56-8-103 "plainly states that it is the sole means" for regulating unfair or deceptive insurance acts or practices. Section 56-8-103 (1995) provides:

> No person shall engage in this state in any trade practice which is defined in this chapter as, or determined pursuant to § 56-8-108 to be, an unfair method of competition or an unfair or deceptive act or practice in the business of insurance.

This language cannot reasonably be construed as limiting the remedies available outside the Insurance Trade Practices Act. Likewise, the language in Tenn. Code Ann. § 56-8-101, explaining the purpose of the Insurance Trade Practices Act, is not relevant to whether a private right of action created outside the Act is

9

available to a consumer who is harmed by an insurance company's act or practice. We therefore conclude that the insurance regulations in Title 56, Chapters 7 and 8 of the Tennessee Code do not foreclose application of the Consumer Protection Act to insurance companies.

Next, we examine the Consumer Protection Act to determine whether the acts and practices of insurance companies are outside its scope. Clearly, they are not. The Consumer Protection Act is remedial, rather than regulatory in nature, and it specifically provides a private right of action for <u>any</u> "[u]nfair or deceptive acts or practices affecting the conduct of any trade or commerce." Tenn. Code Ann. §§ 47-18-104(a) & -109(a)(1) (1995 & Supp. 1997). Within the Act is an nonexclusive list of the unfair or deceptive acts or practices which are prohibited. This list does not specifically address the acts or practices of insurance companies, but it includes a general, "catch-all" provision which prohibits "[e]ngaging in any other act or practice which is deceptive to the consumer or to any other person." Tenn. Code Ann. § 47-18-104(b)(27) (Supp. 1997).

Additionally, it is significant that the Consumer Protection Act specifically exempts certain entities and transactions from the prohibitions of the Act. Tennessee Code Annotated § 47-18-111 (1995) states:

> (a) The provisions of this part do not apply to:
>
> (1) Acts or transactions required or specifically authorized under the laws administered by, or

rules and regulations promulgated by, any regulatory bodies or officers acting under the authority of this state or of the United States;

(2) A publisher, broadcaster, or other person principally engaged in the preparation or dissemination of information or the reproduction of printed or pictorial matter, who has prepared or disseminated such information or matter on behalf of others without notification from the division that the information or matter violates or is being used as a means to violate the provisions of this part;

(3) Credit terms of a transaction which may be otherwise subject to the provisions of this part, except insofar as the Tennessee Equal Consumer Credit Act of 1974, compiled in part 8 of this chapter may be applicable; or

(4) A retailer who has in good faith engaged in the dissemination of claims of a manufacturer or wholesaler without actual knowledge that such claims violated this part.

Insurance companies are not mentioned in this statute. Because exemptions in other areas have been explicitly addressed, the omission of an exemption for insurance companies strongly indicates that no such exemption was intended.

Moreover, to exempt insurance companies from the purview of the Consumer Protection Act would frustrate the purposes of the Act, which include:

(1) To simplify, clarify, and modernize state law governing the protection of the consuming public and to conform these laws with existing consumer protection policies;

11

(2) To protect consumers and legitimate business enterprises from those who engage in unfair or deceptive acts or practices in the conduct of any trade or commerce in part or wholly within this state;

(3) To encourage and promote the development of fair consumer practices;

(4) To declare and to provide for civil legal means for maintaining ethical standards of dealing between persons engaged in business and the consuming public to the end that good faith dealings between buyers and sellers at all levels of commerce be had in this state; and

(5) To promote statewide consumer education.

Tenn. Code Ann. § 47-18-102 (1995). Furthermore, the legislature has explicitly required that the Act be liberally construed in order to effectuate these purposes. Id. Section 47-18-115 (1995) further emphasizes the point: "This part, being deemed remedial legislation necessary for the protection of the consumers of the state of Tennessee and elsewhere, shall be construed to effectuate the purposes and intent."

Finally, the most decisive language is found in Tenn. Code Ann. § 47-18-112 (1995):

The powers and remedies provided in this part shall be cumulative and supplementary to all other powers and remedies otherwise provided by law. The invocation of one power or remedy herein shall not be construed as excluding or prohibiting the use of any other available remedy.

12

This language is crystal clear.  Even when a different code section applies and is invoked to obtain relief, the Consumer Protection Act may also apply, assuming the act or practice in question falls within the scope of its application.

Therefore, the mere existence of comprehensive insurance regulations does not prevent the Consumer Protection Act from also applying to the acts or practices of an insurance company.  In this context, the legislature has enacted a trilogy of statutes which, on their faces, apply to unfair and deceptive insurance trade acts and practices.  We consider the Insurance Trade Practices Act, the bad faith statute, and the Consumer Protection Act as <u>complementary</u> legislation that accomplishes different purposes, and we conclude, accordingly, that the acts and practices of insurance companies are generally subject to the application of all three.

The next question is whether the particular act at issue here--the denial of the Myints' claim--violated the Consumer Protection Act.  The stated purpose of the Consumer Protection Act is "[t]o protect consumers and legitimate business enterprises from those who engage in unfair or deceptive acts or practices in the conduct of any trade or commerce in part or wholly within this State."  Tenn. Code Ann. § 47-18-102(2) (1988).  The terms "trade," "commerce," and "consumer transaction" are defined by the Act to mean

> the advertising, offering for sale, lease or rental, or distribution of any goods, services, or property, tangible or intangible, real, personal, or mixed, and other

> articles, commodities or things of
> value wherever situated.

Tenn. Code Ann. § 47-18-103(9) (1988).

While the sale of a policy of insurance easily falls under this definition of "trade" and "commerce," we conclude that Allstate's conduct in handling the Myints' insurance policy was neither unfair nor deceptive. The record reveals no evidence of an attempt by Allstate to violate the terms of the policy, deceive the Myints about the terms of the policy, or otherwise act unfairly. It is apparent that the denial of the Myints' claim was Allstate's reaction to circumstances which Allstate believed to be suspicious. Consequently, Allstate's conduct does not fall within the purview of the Tennessee Consumer Protection Act, and the Myints are not entitled to the benefits of treble damages and attorney's fees recoverable under the Act. The trial court's dismissal of the Consumer Protection Act claim and the subsequent approval of that dismissal by the Court of Appeals is therefore affirmed.

III

The final issue is whether the trial court properly awarded prejudgment interest to the Myints. They requested the prejudgment interest pursuant to Tenn. Code Ann. § 47-14-123 (1988), which provides:

> Prejudgment interest, i.e., interest as an element of, or in the nature of, damages, as permitted by the statutory and common laws of the state as of April 1, 1979, may be awarded by courts or juries in

14

> accordance with the principles of
> equity at any rate not in excess of
> a maximum effective rate of ten
> percent (10%) per annum . . . .

The trial court's award of $13,106 in prejudgment interest was calculated under the simple interest method by applying a 10% annual interest rate to the judgment amount of $44,750 from June 26, 1991, the date the insurance claim was denied, to May 31, 1995, the date the trial court's judgment was entered.

An award of prejudgment interest is within the sound discretion of the trial court and the decision will not be disturbed by an appellate court unless the record reveals a manifest and palpable abuse of discretion. Spencer v. A-1 Crane Service, Inc., 880 S.W.2d 938, 944 (Tenn. 1994); Otis v. Cambridge Mut. Fire Ins. Co., 850 S.W.2d 439, 446 (Tenn. 1992). This standard of review clearly vests the trial court with considerable deference in the prejudgment interest decision. Generally stated, the abuse of discretion standard does not authorize an appellate court to merely substitute its judgment for that of the trial court. Thus, in cases where the evidence supports the trial court's decision, no abuse of discretion is found. See State v. Grear, 568 S.W.2d 285, 286 (Tenn. 1978) (applying abuse of discretion standard to trial court's decision to deny request for suspended sentence), cert. denied, 439 U.S. 1077, 99 S. Ct. 854, 59 L. Ed.2d 45 (1979).

Several principles guide trial courts in exercising their discretion to award or deny prejudgment interest. Foremost are the

15

principles of equity.  Tenn. Code Ann. § 47-14-123.  Simply stated, the court must decide whether the award of prejudgment interest is fair, given the particular circumstances of the case.  In reaching an equitable decision, a court must keep in mind that the purpose of awarding the interest is to fully compensate a plaintiff for the loss of the use of funds to which he or she was legally entitled, not to penalize a defendant for wrongdoing.  Mitchell v. Mitchell, 876 S.W.2d 830, 832 (Tenn. 1994); Otis, 850 S.W.2d at 446.

In addition to the principles of equity, two other criteria have emerged from Tennessee common law.  The first criterion provides that prejudgment interest is allowed when the amount of the obligation is certain, or can be ascertained by a proper accounting, and the amount is not disputed on reasonable grounds.  Mitchell, 876 S.W.2d at 832.  The second provides that interest is allowed when the existence of the obligation itself is not disputed on reasonable grounds.  Id. (citing Textile Workers Union v. Brookside Mills, Inc., 205 Tenn. 394, 402, 326 S.W.2d 671, 675 (1959)).

We note that these criteria, if strictly construed, could prohibit the recovery of prejudgment interest in the vast majority of cases.  Indeed, only a liquidated claim, for which prejudgment interest is already recoverable as a matter of right under Tenn. Code Ann. § 47-14-109,[6] can truly be considered an obligation of certain and indisputable amount.  Further, it is safe to say that,

_____

[6]Section 47-14-109(b) (1995) provides:  "Liquidated and settled accounts, signed by the debtor, shall bear interest from the time they become due, unless it is expressed that interest is not to accrue until a specific time therein mentioned."

16

at trial, defendants usually can articulate at least one good reason for disputing the existence of the obligation, for were it otherwise, defendants would rarely survive summary judgment. Finally, the focus on whether the defendant had a reasonable defense ignores the principle that prejudgment interest is not a penalty imposed on the defendant for indefensible conduct.

Not surprisingly, an analysis of relevant case law reveals that these criteria have not been used to deny prejudgment interest in every case where the defendant reasonably disputed the existence or amount of an obligation. More typically, courts either use the certainty of a claim as support for an award of prejudgment interest, or they do not discuss the certainty of the claim at all. See, e.g., Mitchell, 876 S.W.2d at 832 (allowing the award of interest where the existence and amount of the obligation under a settlement agreement were not reasonably disputed); Otis, 850 S.W.2d at 446 (allowing the award of interest to a plaintiff whose right to recover under a fire insurance contract was reasonably disputed on the grounds of arson and misrepresentation); Performance Systems, Inc. v. First American Nat. Bank, 554 S.W.2d 616, 619 (Tenn. 1977) (allowing the award of interest, although the existence of the defendant's obligation under the lease was reasonably disputed); Johnson v. Tennessee Farmers Mut. Ins. Co., 556 S.W.2d 750, 752 (Tenn. 1977)(allowing the award of interest, although the amount of recovery under the insurance claim was reasonably disputed); Uhlhorn v. Keltner, 723 S.W.2d 131, 138 (Tenn. App. 1986) (allowing award of interest in a boundary dispute case, where the existence of any obligation to pay rent and the amount of rent due were both reasonably disputed);

<u>Schoen v. J.C. Bradford & Co.</u>, 667 S.W.2d 97, 101-02 (Tenn. App. 1984)(rejecting argument that prejudgment interest should not be imposed when defendant appealed in good faith).[7]

Thus, we find that if the existence or amount of an obligation is certain, this fact will help support an award of prejudgment interest as a matter of equity. After all, the more clear the fact that the plaintiff is entitled to compensatory damages, the more clear the fact that the plaintiff is also entitled to prejudgment interest as part of the compensatory damages. The converse, however, is not necessarily true. The uncertainty of either the existence or amount of an obligation does not <u>mandate</u> a denial of prejudgment interest, and a trial court's grant of such interest is not automatically an abuse of discretion, provided the decision was otherwise equitable. The certainty of the plaintiff's claim is but one of many nondispositive facts to consider when deciding whether prejudgment interest is, as a matter of law, equitable under the circumstances.

Turning to the facts at hand, the Court of Appeals found that the trial court abused its discretion in awarding prejudgment interest because the amount due was not certain and Allstate had a

_____

[7]<u>But see</u> <u>Textile Workers Union</u>, 205 Tenn. at 402-03, 326 S.W.2d at 675 (where the employer reasonably and in good faith disputed its contractual obligation to provide vacation pay to certain employees, there was no reasonable basis for allowance of interest); <u>Howard G. Lewis Construction Co. v. Lee</u>, 830 S.W.2d 60, 66 (Tenn. App. 1991) (where the plaintiff requests $25,000 in damages but receives only $11,000, there is too substantial a controversy over the amount due, rendering the award of interest an abuse of discretion). To the extent these cases suggest that prejudgment interest can never be awarded when a claim is reasonably disputed, regardless of any equitable considerations, they are hereby overruled.

reasonable basis upon which to dispute the Myints' right to recovery. Concededly, Allstate did have a reasonable basis on which to dispute liability in this case, considering the series of events which led to the loss: (1) the Myints were notified by a letter dated October 18, 1991, that their insurance policy would be canceled as of December 2, 1991; (2) this cancellation was due to the deteriorating condition of the house; (3) five days later, on October 23, a small fire was intentionally set in the basement of the house; and (4) on October 26, a second fire was intentionally set, causing more extensive damage. Although no conclusive evidence was adduced to support Allstate's suspicions that the Myints were involved in the arsons, under these circumstances, Allstate's denial of the claim was certainly reasonable.

While the Myints' right of recovery may have been reasonably disputed, we are not convinced that the amount of recovery was uncertain for the purposes of prejudgment interest. The test for determining whether the amount of damages is certain is not whether the parties agree on a fixed amount, for a fixed amount would be a liquidated claim, and the plaintiff would have a right to collect interest under Tenn. Code Ann. § 47-14-109(b). Instead, the test is whether the amount of damages is ascertainable by computation or by any recognized standard of valuation. This is true even if there is a dispute over monetary value or if the parties' experts compute differing estimates of damage. See Unlimited Equip. Lines v. Graphic Arts Centre, Inc., 889 S.W.2d 926, 942-43 (Mo. Ct. App. 1994); Community State Bank v. O'Neill, 553 N.E.2d 174, 177-78 (Ind. Ct. App. 1990). Here, the amount of damages was ascertainable by two well-accepted methods of

19

valuation:  by estimation of the cost to repair the fire damage, and by calculation of the difference between the market value of the house prior and subsequent to the fire.  That these values were contested by the parties does not preclude an award of prejudgment interest.

Additional facts indicate that the trial court's award of prejudgment interest was an equitable decision.  First, a jury determined that the Myints did not commit arson and were legally entitled to the insurance proceeds.  Yet, they were without the use of those proceeds from the date of the loss, October 1990, to the trial court's judgment in May 1995--a period of approximately four and a half years.  During that time, Allstate had full use of the funds, while the Myints possessed only unproductive property. Unquestionably, then, the Myints cannot be <u>fully</u> compensated without the award of interest.  Further, the trial court did not allow the interest to begin accruing until the date Allstate denied the claim, June 1991, rather than the date of the loss, as the trial court did in <u>Wilder v. Tennessee Farmers Mutual Ins. Co.</u>, 912 S.W.2d 722, 727 (Tenn. App. 1995) (award of interest beginning at date of loss was abuse of discretion; two year period was more appropriate under the circumstances).

In conclusion, we find that there is evidence here to support the award of prejudgment interest. Consequently, the trial court's decision was not a "manifest and palpable abuse of discretion," and, as a matter of law, we are constrained to sustain

20

the trial court's judgment, even if we were to disagree with it.[8]

IV

In sum, we hold that the Consumer Protection Act, although applicable to the insurance industry as a whole, does not provide a right to recovery to the Myints for the denial of their insurance claim.  Further, under the circumstances of this case, we find no error in the award of prejudgment interest.  Accordingly, we affirm the Court of Appeals' dismissal of the claim made under the Consumer Protection Act.  We reverse the Court of Appeals' decisions that the Consumer Protection Act does not apply to insurance companies and that the prejudgment interest award was an abuse of discretion.

_____
ADOLPHO A. BIRCH, JR., Justice

_____

[8]As a final matter, Allstate argues that it had a constitutional right to have the issue of prejudgment interest decided by a jury, under Article I, § 6 of the Tennessee Constitution.  Allstate cites one unpublished decision for support, a decision which has already been implicitly overruled by Mitchell, 876 S.W.2d at 832, on the issue of pleading requirements for prejudgment interest.

We find Allstate's argument without merit.  As Tenn. Code Ann. § 47-14-123 indicates, prejudgment interest is awarded as a matter of equity.  The right to a jury in an equitable matter is not the common law right guaranteed by the constitution.  Rather, the right exists only to the extent provided by Tenn. Code Ann. § 21-1-103. This statute provides a right to have "any material fact in dispute" tried by a jury in chancery, but it does not require that the jury also decide all mixed questions of law and fact.  See Wright v. Quillen, 909 S.W.2d 804, 813-14 (Tenn. App. 1995); Sasser v. Averitt Express, Inc., 839 S.W.2d 422, 434 (Tenn. App. 1992). In this case, the jury found the facts, and the court decided whether an award of prejudgment interest was equitable in light of those facts.  We do not find this improper.

CONCUR:

Anderson, C.J.
Drowota, Holder, JJ.
Reid, S.J.