**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 05a0351n.06
Filed: May 4, 2005

No. 04-5257

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

PARKWAY ASSOCIATES, LLC,
    *Plaintiff-Appellant*,

       v.

HARLEYSVILLE MUTUAL INSURANCE CO.,
    *Defendant-Appellee*.

On Appeal from the
United States District Court for
the Middle District of Tennessee

_____/

BEFORE:  KENNEDY, MOORE, and SUTTON, Circuit Judges.

KENNEDY, Circuit Judge.   This appeal arises out of a diversity action brought by an insured, Parkway Associates, against its commercial general liability insurer, Harleysville Mutual Insurance Co., for 1) bad faith refusal to pay an insurance claim in violation of Tenn. Code Ann. § 56-7-105, 2) violation of the Tennessee Consumer Protection Act ("TCPA"), Tenn. Code Ann. 47-18-101 *et seq*., and 3) misrepresentation.  Harleysville moved for summary judgment on the above claims, which the district court granted.  The district court then ordered the parties to participate in a binding appraisal process as required by the insurance policy.  After an appraisal award was issued, Harleysville moved to confirm the award.  In confirming the award, the district court held that the insurance policy entitled Parkway only to the "actual cash value" of its loss, not the "replacement cost value," since the policy requires that the property be actually repaired, which it was not, for the insured to recover the replacement cost value.  In so holding, the district court summarily dismissed Parkway's claim that Harleysville was estopped from relying upon the "actual

1

repair" condition of the policy. Moreover, the court held that Parkway was not entitled to either "overhead and profit" or prejudgment interest. Parkway appeals from both the district court's order granting summary judgment to Harleysville and from the court's order affirming the appraisal award. For the following reasons, we affirm the district court's dismissal of Parkway's bad faith, TCPA, and misrepresentation claims, set aside its judgment that Parkway is not entitled to the replacement cost value of its loss, overhead and profit, and prejudgment interest, and remand for proceedings consistent with this opinion.

## BACKGROUND

Harleysville issued a commercial insurance policy to Parkway to insure an eight-story structure designed and utilized as a hotel. On April 17, 1998, Parkway reported to Harleysville that it sustained a loss due to a tornado that occurred in the Nashville area the preceding day. On April 18, 1998, Gregg Parker, an adjuster for Harleysville, inspected Parkway's property and advanced it $50,000 to handle the immediate cleanup work. After conducting an inspection of the loss, Harleysville advanced Parkway a total of $348,995 in installments. Parker also contracted with Jay Construction in an effort to repair the roof over Parkway's property. Meanwhile, Parkway hired Jeff Fisher as its agent to supervise the construction work. Fisher told Jay Construction that Parkway would not authorize it to do further work without estimates or plans as to what repairs it intended to perform. After Parker was informed of Fisher's statement, Parker told Jay Construction not to proceed without a building estimate.

Parkway's insurance claim consisted of both property and content damage and business interruption loss. With respect to the business interruption portion of Parkway's claims, Harleysville retained Alan Moore, CPA, to assist in the valuation of the loss while Parkway retained the Alex N.

2

Sill Company to represent its interest. Parkway advised Moore to communicate directly with Joe Migliore, a CPA with the Sill Company.

On May 1, 1998, Moore wrote Migliore to request certain records to assist in Harleysville's evaluation of Parkway's business interruption loss claim. On May 29, 1998, Moore received certain records pursuant to his request. Migliore acknowledged, however, that certain information still needed to be provided. Thereafter, on June 29, July 21, and September 10, 1998, Moore requested that Migliore or Parkway provide certain documents and records that would assist him in evaluating the business interruption claim. Although Moore received from the Sill Company Parkway's business interruption claim on September 21, 1998, he had still not received all the information he needed in order to form an estimate as to Parkway's business interruption claim. On October 20, 1998, Moore directed a letter to Parkway requesting the outstanding documents. Since Harleysville had not received all the information it needed in order to form an estimate as to Parkway's business interruption loss, it could not make an offer to settle this portion of Parkway's claim.[1] Nonetheless, on October 22, 1998, Harleysville made an offer to settle the property and content damages portion of the insured's claim for $400,000. Parkway complains that Harleysville gave no explanation as to the basis of the offer. Moreover, Parkway asserts, the offer was "totally unacceptable" in light of its estimate that it suffered in excess of $800,000 in property and content damages. On November 13, 1998, Moore received a correspondence from Migliore that provided the information

[1] Parkway argues, on the basis of Migliore's opinion, that Harleysville had sufficient information as of September 21, 1998, to determine the amount of Parkway's business interruption loss. It is undisputed, however, that as of September 21, 1998, Harleysville had yet to receive invoices for expenses incurred during the loss period. Additionally, on November 13, 1998, Migliore informed Moore that he requested Parkway to provide Moore with additional information, including the schedules showing miscellaneous expenses on Parkway's 1995, 96, and 97 tax returns.

pursuant to his request of October 20, 1998. In his correspondence, Migliore notes that he requested that Parkway provide still additional information. On December 21, 1998, Moore received the additional information that he had requested. During this time period, Moore was advised that both Parkway and Harleysville had retained counsel. As a result, Moore ceased communication with Parkway directly.

On March 1, 1999, Parkway filed this lawsuit against Harleysville. At that time, Harleysville was still trying to obtain from Parkway all the documents it needed in order to reach a business interruption loss estimate. On June 30, 1999, Moore requested that Harleysville's attorney secure the documentation that had not yet been provided. On July 15, 1999, Harleysville provided Moore with certain documents that it was able to obtain from Parkway. On August 16, 1999, Moore requested that Harleysville's attorney obtain the still outstanding documents that he needed in order to form a business interruption loss estimate. On August 20, 1999, Harleysville informed Parkway's counsel of Moore's request and the reasons for it. In Moore's view, he could not calculate the business interruption claim without the information requested.

On October 4, 1999, Harleysville moved for summary judgment. On February 5, 2001, the district court granted Harleysville's motion with respect to the following claims: bad faith refusal to pay an insurance claim, violation of the TCPA, and misrepresentation.

The district court then ordered the parties to submit to the appraisal process as required by the parties' policy. Parkway's policy permits either party to request that the matter be submitted to two appraisers, one selected by each party, for a binding decision as to the value of the loss. In this case, each party selected an appraiser and the dispute was submitted to them for decision. On September 18, 2003, the appraisers issued an "award" reflecting their agreed upon value of the loss.

4

The award contained two different valuations: one for "replacement cost value" and one for "actual cash value," depending on which valuation was ultimately authorized by the policy. The replacement cost value was $694,549, while the actual cash value was $607,728. With respect to both valuation methods, the appraisers' award included an allocation for "general contractor's overhead and profit" of $61,520 for replacement cost and $57,283 for actual cash value. On November 20, 2003, Harleysville moved to confirm the appraisers' award. In confirming the award, the district court held that the policy permitted Parkway to recover only the actual cash value and that Parkway was not entitled to overhead and profit nor prejudgment interest.

## ANALYSIS

We first consider whether the district court properly granted summary judgment in favor of Harleysville on Parkway's bad faith refusal to pay an insurance loss, Tennessee Consumer Protection Act, and misrepresentation claims.[2]

We review a district court's grant of summary judgment *de novo*, using the same standard under Federal Rule of Civil Procedure 56(c) used by the district court. *Williams v. Mehra*, 186 F.3d 685, 689 (6th Cir. 1999). Summary judgment is appropriate where the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). In deciding a motion for summary judgment, "we must view the factual evidence and draw all reasonable inferences in favor of the non-moving party." *Nat'l Enters. v. Smith*, 114 F.3d 561, 563 (6th Cir. 1997). To

---

[2] We affirm the district court's grant of summary judgment in favor of Harleysville on Parkway's misrepresentation claim as Parkway has failed to show how it relied upon any of the alleged misrepresentations to its detriment.

5

prevail, the non-movant must show sufficient evidence to create a genuine issue of material fact. *Klepper v. First Am. Bank*, 916 F.2d 337, 342 (6th Cir. 1990). "The mere existence of a scintilla of evidence in support of the [non-movant's] position will be insufficient; [rather] there must be evidence on which the jury could reasonably find for the [non-movant]." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986).

## I.

**A.**     Parkway claims that it is entitled to recover for Harleysville's bad faith refusal to pay its loss in violation of Tenn. Code Ann. § 56-7-105. In support of this claim, Parkway asserts that Harleysville 1) unreasonably delayed both its investigation of the loss and payment of benefits, 2) attempted to settle the claim for less than Parkway was reasonably entitled to, and 3) could have easily reached an opinion as to the amount of the business interruption loss once it received the Sill Company's estimate on September 21, 1998, and certainly before this suit was filed on March 1, 1999, since it possessed more than enough information to make such a determination.

Tenn. Code Ann. § 56-7-105 authorizes a court to impose a penalty of up to twenty-five percent of the amount of the insured's loss on an insurer for refusing to pay a loss in bad faith. Before an insured can recover for its insurer's bad faith refusal to pay a loss, the insured must establish that 1) its policy of insurance became due, 2) it made a formal demand for payment, 3) it waited 60 days after making its demand before filing suit (unless there was a refusal to pay prior to the expiration of the 60 days), and 4) the insurer's refusal was not made in good faith. *Palmer v. Nationwide Mut. Fire Ins. Co.*, 723 S.W.2d 124, 126 (Tenn. Ct. App. 1986). It is well established that a "delay in settling a claim does not constitute bad faith when there is a genuine dispute as to the value, no conscious indifference to the claim, and no proof that the insurer acted from 'any

6

improper motive.'" *Id.* (citing *Johnson v. Tenn. Farmers Mut. Ins. Co.*, 556 S.W.2d 750, 752 (Tenn. 1977)). Moreover, while the insurer owes a "duty of exercising good faith and diligence in protecting the interest of its insured," the insured owes a reciprocal duty of full co-operation. *S. Fire & Cas. Co. v. Norris*, 250 S.W.2d 785, 790 (Tenn. Ct. App. 1952).

We conclude that the district court properly granted summary judgment on Parkway's bad faith claim since, in light of the evidence, no reasonable trier of fact could conclude that Harleysville refused to pay Parkway's loss in bad faith. Rather, the evidence establishes that Harleysville never denied coverage or refused to pay Parkway's claim. Indeed, Harleysville advanced nearly $350,000 to Parkway after the loss occurred and offered to settle Parkway's property and contents claim. With respect to Parkway's business interruption claim, the evidence establishes that Harleysville repeatedly requested to review certain documents that it needed to evaluate the claim. The insurance contract provides that Parkway must cooperate fully with Harleysville's investigation and settlement of Parkway's claims. Harleysville's repeated attempts to obtain the documents it needed to form an opinion as to Parkway's business interruption loss evidences that it was not consciously indifferent to Parkway's claim. Moreover, Harleysville did not make the repeated requests for documents relating to Parkway's business interruption loss as part of a dilatory tactic to "starve Parkway out." Rather, it needed the requested documents to evaluate Parkway's business interruption loss claim, especially considering that, although Parkway's business operated at a net loss during the years preceding the damage, Parkway's experts were projecting a significant amount of profits for the period of time after the tornado hit in April of 1998. Thus, there was no evidence indicating that Hareleysville had an improper motive with respect to its requests for documents. The district court properly granted Harleysville summary judgment on Parkway's bad faith claim.

7

**B.**     Parkway also claims that Harleysville violated the Tennessee Consumer Protection Act by engaging in deceptive practices. The TCPA provides a lengthy list of prohibited unfair or deceptive acts or practices. *See* Tenn. Code Ann. § 48-18-104(b)(1)-(36). Parkway, however, in support of its claim, relies upon the "catch-all" provision, which prohibits "engaging in any other act or practice which is deceptive to the consumer or to any other person." *Id*. § 47-18-104(b)(27). The Tennessee Supreme Court has indicated that a "deceptive act or practice is a material representation, practice or omission likely to mislead a reasonable consumer." *Ganzevoort v. Russell*, 949 S.W.2d 293, 299 (Tenn. 1987). Parkway asserts that Harleysville violated the TCPA by 1) failing to return telephone calls, 2) forcing Parkway into litigation, and 3) placing the mortgage holder's name on the checks it submitted to Parkway.[3] Nowhere does Parkway explain how it was misled or deceived by these acts. Parkway fails to state a claim for a violation of the TCPA. Thus, the district court properly granted Harleysville summary judgment on this claim.

## II.

Next, we consider whether the district court, in affirming the appraisers' award, erred in holding that Parkway 1) was only entitled to recover on an "actual cash value" basis, rather than on a "replacement cost" basis, 2) was not entitled to overhead and profit, and 3) was not entitled to prejudgment interest.

**A.**     Harleysville asserted in its motion to confirm the appraisers' award that Parkway was entitled to a recovery only on an "actual cash value basis" instead of on a "replacement cost basis" because

---

[3] Parkway also asserts that the same arguments in support of its bad faith refusal to pay claim support a finding that Harleysville violated the TCPA. We find that none of the alleged acts that Parkway raises in support of its bad faith claim supports a finding that Harleysville violated the TCPA.

8

the policy provides that Harleysville will not pay on a replacement cost basis for any loss until the damaged property is actually repaired, which it was not. In its response, Parkway asserted that a question of fact existed as to whether Harleysville was "equitably estopped from relying upon the policy language to forego its responsibility to pay replacement cost." Parkway was permitted to file an amended complaint claiming, specifically, that Harleysville was equitably estopped from relying upon the policy's "actual repair" condition to resist paying replacement costs due to Harleysville inaction, delay, and misleading conduct, which, it claims, prevented it from actually repairing the property. The district court, in holding that Parkway was entitled only to the "actual cash value" of the loss, did not address Parkway's equitable estoppel claim. In effect, the district court summarily dismissed Parkway's equitable estoppel claim as Harleysville never moved to dismiss the claim. The district court may not have explicitly considered Parkway's equitable estoppel claim because Parkway raises essentially the same arguments in support of this claim as it raised in support of its bad faith, TCPA, and misrepresentation claims, which the district court did address and dismiss. However, since the district court permitted Parkway to amend its complaint to allege this claim, the court should have given Parkway both notice of the court's intent to dismiss the claim and an opportunity to respond. *Benson v. O'Brian*, 179 F.3d 1014, 1015 (6th Cir. 1999) (citing *Tingler v. Marshall*, 716 F.2d 1109, 1112 (6th Cir. 1983) (noting that a district court faced with a claim that it believes may be subject to dismissal must notify all parties of its intent to dismiss the claim and give the plaintiff a chance to respond to the reasons stated by the district court in its notice of intended dismissal.).

**B.**     After finding that Parkway was entitled to recover only the actual cash value of its loss, rather than the replacement value (a conclusion that the district court will have to reconsider in light

9

of Parkway's equitable estoppel claim), the district court then concluded that contractor's overhead and profit should be deducted from the actual cash value. In reaching this conclusion, the district court noted that Tennessee requires anyone who engages in contracting to be licensed, and that all unlicensed contractors who engage in contracting are to receive only their actual expenses. Tenn. Code Ann. § 62-6-103(a)(1) & (b). Parkway intended to hire Jeff Fisher, an unlicensed contractor, to repair its property. The district court concluded that since Fisher could only recover his actual expenses, Parkway was not entitled to contractor's overhead and profit.

Parkway's policy provides that it is entitled to recover the actual cash value of its loss. The actual cash value of a loss is equal to the repair or replacement costs less depreciation. *Braddock v. Memphis Fire Ins. Corp.*, 493 S.W.2d 453, 460 (Tenn. 1973). The Tennessee courts have not determined what repair or replacements costs include. Other courts, however, have held that "[r]epair or replacement costs logically and necessarily include any costs that an insured reasonably would be expected to incur in repairing or replacing the covered loss." *Gilderman v. State Farm Ins. Co.*, 649 A.2d 941, 945 (Pa. Super. Ct. 1994); *accord Salesin v. State Farm Fire & Cas. Co.*, 581 N.W.2d 781, 790-91 (Mich. Ct. App. 1998); *Ghoman v. N.H. Ins. Co.*, 159 F. Supp. 2d 928, 934 (N.D. Tex. 2001). Although there are some types of losses where the services of a contractor would normally not be utilized, "[t]here are many instances where the insured reasonably would be expected to call a contractor, especially where there is extensive damage." *Gilderman*, 649 A.2d at 945. If a contractor would reasonably not be required to repair an insured's loss, then contractor's overhead and profit would not be included in replacement costs. In the instant case, however, Parkway would reasonably be expected to hire a contractor to repair its property. Since the actual cash value of a loss is the repair or replacement costs less depreciation, and since the cost of a

10

contractor would reasonably be incurred in repairing Parkway's damaged property, then the costs of contractor's overhead and profit would be included in the actual cash value of Parkway's loss.

The statute relied upon by the district court says nothing to the issue of whether an insured who contracts to receive the actual cash value of its loss must deduct overhead and profit because it plans to hire an unlicensed contractor. The fact that Jeff Fisher, if he ultimately repairs Parkway's property, would not be entitled to profit does not mean that Parkway is not entitled to what it bargained from Harleysville, which is the actual cash value of its loss. In essence, Harleysville complains that Parkway would receive a windfall if it paid Parkway contractor's overhead and profit where Parkway hires a contractor that is not entitled to earn a profit. The same general argument was raised in both *Salesin* and *Ghoman*. In those cases, the insurers argued that they were entitled to deduct contractor's overhead and profit from the actual cash value awards since the insureds, who repaired their damaged property themselves, did not incur the costs of contractor's overhead and profit. *Salesin*, 581 N.W.2d at 784, 791; *Ghoman*, 159 F. Supp. 2d at 934. Both courts concluded that the fact that the insureds did not incur the costs for contractor's overhead and profit was irrelevant because the insureds contracted to receive the actual cash value of their losses, which included contractor's overhead and profit since, in light of the damages the insureds incurred, it would have reasonably been necessary to utilize a contractor to make their repairs. *Salesin*, 581 N.W.2d at 791; *Id*. Similarly, in this case, Parkway contracted to receive the actual cash value of its loss. It is irrelevant to the determination of the actual cash value of its loss that Parkway might employ an unlicensed contractor who is not entitled to earn a profit. What Parkway actually spends to repair its property does not affect its right to recover the actual cash value of its loss, as the actual cash value is not calculated based upon what the insured ultimately pays to repair its property.

11

Indeed, even if Parkway chooses not to repair its property at all, it would still be entitled to what it bargained for: the actual cash value of its loss, which includes contractor's overhead and profit where a contractor would reasonably be utilized to make repairs. We set aside the district court's order deducting overhead and profit from the actual cash value of Parkway's loss.[4]

**C.** Finally, we consider whether the district court properly denied Parkway's request for prejudgment interest. An award of prejudgment interest is within the sound discretion of the trial court. *Myint v. Allstate Ins. Co.*, 970 S.W.2d 920, 927 (Tenn. 1998). "While the 'abuse of discretion' standard limits the scope of our review of discretionary decisions, it does not immunize these decisions completely from appellate review. Even though it prevents us from second-guessing the trial court, . . . it does not prevent us from examining the trial court's decision to determine whether it has taken the applicable law . . . into account. We will not hesitate to conclude that a trial court 'abused its discretion' when the court has applied an incorrect legal standard . . . ." *Johnson v. Nissan North America, Inc.*, 146 S.W.3d 600, 604 (Tenn. Ct. App. 2004) (internal citations omitted).

Because the district court applied an incorrect legal standard in deciding whether to grant Parkway prejudgment interest, we set aside this part of the district court's order. In support of its decision to deny prejudgment interest, the district court stated that Parkway's insurance policy "does not authorize the recovery of interest and the Court cannot award it" because "Tennessee law does not award [prejudgment interest] for unliquidated damages." For support of this proposition, the

---

[4] We do not consider whether Harleysville engaged in bad faith by raising the argument that Parkway was not entitled to recover contractor's overhead and profit since Parkway did not raise this argument below. Rather, Parkway merely argued that Harleysville's delay and inaction in settling its claim constituted bad faith.

12

district court relied upon *Howard G. Lewis Construction Company, Inc. v. Lee*, 830 S.W.2d 60 (Tenn. Ct. App. 1991).

The district court incorrectly relied upon *Howard G. Lewis* for the proposition that Tennessee does not award prejudgment interest for unliquidated damages because *Myint v. Allstate Insurance Company*, 970 S.W.2d 920, 927 (Tenn. 1998), overruled *Howard G. Lewis* on this point. The *Myint* court overruled *Howard G Lewis* to the extent that it suggested that prejudgment interest could never be awarded when a claim is reasonably disputed, regardless of any equitable considerations. 970 S.W.2d at 928 n.7. The court noted that several principles should "guide trial courts in exercising their discretion to award or deny prejudgment interest. Foremost are the principles of equity. Simply stated, the [trial] court must decide whether the award of prejudgment interest [would be] fair." *Id*. at 927 (citations omitted). In addition, the court continued, "if the existence or amount of an obligation is certain, this fact will help support an award of prejudgment interest," while the "uncertainty of either the existence or amount of an obligation does not *mandate* a denial of prejudgment interest . . . ." *Id*. at 928. Finally, the court explained, the "test for determining whether the amount of damages is certain is not whether the parties agree on a fixed amount . . . . Instead, the test is whether the amount of damages is ascertainable by computation or any recognized standard of valuation. This is true even if there is a dispute over monetary value or if the parties' experts compute differing estimates of damage." *Id*. Upon remand, the district court should apply these principles to determine, in its discretion, whether the award of prejudgment interest would serve the principles of equity.

**III.**

13

For the foregoing reasons, we AFFIRM the district court's dismissal of Parkway's bad faith, TCPA, and misrepresentation claims, SET ASIDE its judgment that Parkway is not entitled to 1) the replacement cost value of its loss, 2) contractor's overhead and profit, 3) and prejudgment interest, and REMAND for proceedings consistent with this opinion.