**NOT RECOMMENDED FOR FULL TEXT PUBLICATION**
File Name: 07a0431n.06
Filed: June 20, 2007
No. 06-5917

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

PARKWAY ASSOCIATES, LLC,
    *Plaintiff, Appellant*

                                                   On Appeal from the United States District
                                                   Court for the Middle District of Tennessee

            v.

HARLEYSVILLE MUTUAL INSURANCE CO.,
    *Defendant, Appellee*

_____/

**BEFORE:  KENNEDY, MOORE, and SUTTON, Circuit Judges.**

**KENNEDY, Circuit Judge.** This case is before us for the second time.  In our earlier decision, we affirmed in part and reversed in part the district court's grant of summary judgment for Harleysville Mutual Insurance Company ("Harleysville") and remanded for further proceedings. After remand, the district court again granted summary judgment on all claims in favor of Harleysville.  Parkway Associates, LLC ("Parkway") now appeals, arguing that the district court erred when it (1) dismissed its claim based on equitable estoppel, (2) dismissed its claim based on breach of contract, and (3) denied an award for prejudgment interest.  We **AFFIRM** in part and **REVERSE** in part.

## BACKGROUND

This panel's previous decision in this case, *Parkway Assoc's. v. Harleysville Mut. Ins. Co.*, 129 Fed. Appx. 955, No. 04-5257 (6th Cir. 2005) ("*Harleysville I*") (unpublished), recounts the

relevant facts in detail. As a result, we will limit our discussion of the facts necessary to the resolution of the above issues.

In April of 1998, Parkway filed a claim with Harleysville for tornado damage to a property Parkway operated as a hotel. The claim included property and content damage as well as business interruption loss. Harleysville advanced Parkway almost $350,000, in installments, and sought information and documents from Parkway in order to better estimate the value of the business interruption loss. Unsatisfied with Harleysville's settlement offers and with the length of the claim investigation, Parkway filed suit against Harleysville in March of 1999 claiming, *inter alia*, breach of contract for failure to pay. The district court decided Parkway's other claims, which we later affirmed on appeal, and ordered the parties submit to an arbitration appraisal process as specified by the governing insurance policy.

The appraisal resulted in two alternative figures: one for "replacement cost value" and one for "actual cash value," leaving to the district court the determination of which value was appropriate under the terms of the policy. Harleysville moved to confirm the appraiser's award for actual cash value. Subsequently, Parkway amended its complaint to allege that equitable estoppel barred Harleysville from enforcing a condition of the policy which required "actual repair" in order to qualify for replacement cost value. Under this condition, Parkway could claim the replacement cost value of the property only *after* it had repaired the damage to the property. Parkway alleged that Harleysville was equitably estopped from enforcing this condition because of, "its inaction, delay[,] and misleading conduct[, upon]which Parkway relied to its detriment." Am. Compl., ¶¶ 12a, 12b.

The district court granted Harleysville summary judgment, finding that actual cash value was the appropriate figure, denying Parkway prejudgment interest, and (as previously mentioned) denying

2

Parkway's other claims. Parkway appealed to this court. We affirmed the district court's denial of Parkway's other claims,[1] but remanded because we found that, "[t]he district court . . . did not address Parkway's equitable estoppel claim. . . .[S]ince the district court permitted Parkway to amend its complaint to allege this claim, the court should have given Parkway both notice of the court's intent to dismiss the claim and an opportunity to respond." *Harleysville I*, 129 Fed. Appx. at 961. In addition, we found that the district court had failed to consider *Myint v. Allstate Ins. Co.*, 970 S.W.2d 920, 926 (Tenn. 1998), which set the standard in Tennessee that a trial court must consider when granting or denying prejudgment interest, and thus we vacated the denial of prejudgment interest and remanded for consideration of *Myint*.

On remand, the district court held that equitable estoppel did not prevent Harleysville from relying on the actual repair condition in the policy. As a result, it held that the actual cash value reached by the appraisal was the correct figure, that Harleysville had tendered this amount to Parkway, and thus that Parkway's breach of contract claim was without merit. In addition, it again denied Parkway prejudgment interest. Parkway filed this timely appeal.

## ANALYSIS

We review a district court's order of summary judgment *de novo. Williams v. Mehra*, 186 F.3d 685, 689 (6th Cir. 1999). We use the same standard, under Fed. R. Civ. P. 56(c), as the district court. *Id*. Therefore, we will affirm a grant of summary judgment if the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a

---

[1]In addition, we reversed the district court's finding that Parkway was not entitled to contractor's overhead and profit. Harleysville subsequently paid that amount.

3

matter of law." Fed. R. Civ. P. 56(c). To defeat a summary judgment motion, the non-movant must show that there is more than a "mere . . . scintilla of evidence in support of [its] position . . .; [rather] there must be evidence on which the jury could reasonably find for the [non-movant]." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986).

**I.**

**A. Equitable Estoppel**

Parkway argues that the district court erred in dismissing its equitable estoppel claim. The essence of its claim is that, "[n]ormally it would have been reasonable [to] accomplish[ the repairs] within three to four months after [the claim]. However, Harleysville did not, during this time frame, communicate its final assessment . . . nor did it make sufficient advances . . . to fund repairs. . . . The . . . money advanced [was] always too little . . . and too late." Appellant's Final Br. at 37. Therefore Harleysville, knowing that Parkway did not have sufficient independent funds, prevented it from actually repairing the property.

The district court found that, "any delay in this action arises from Parkway's lack of cooperation and intransigence in its position on the evaluation of its loss as well as Parkway's insistence that Harleysville pay replacement costs without repairs actually being made." Dist. Ct. Mem. at 22 (June 23, 2006). Our court, in the first appeal in this case, affirmed a similar ruling, finding on remand that the Harleysville's delay was caused by Parkway's failure to procure documents in a timely fashion and was not in any way in bad faith. *Harleysville I*, 129 Fed. Appx. at 960. Without belaboring the discussion, therefore, we conclude that the district court did not err in its finding. Harleysville advanced Parkway substantial sums during the course of its investigation

4

and continually attempted to work with Parkway to conduct an accurate assessment of the damage caused to the property by the tornado.

Furthermore, as the district court also found, Parkway's allegations do not establish a claim for equitable estoppel under the law of Tennessee, which "requires as a minimum: (1) reliance upon the statement or actions of another without opportunity to know the truth; and (2) action based on that reliance which results in detriment to the one acting." *Campbell v. Precision Rubber Products Corp.*, 737 S.W.2d 283, 286 (Tenn. Ct. App. 1987); *see also Werne v. Sanderson*, 954 S.W.2d 742, 746 (Tenn. Ct. App. 2001). In its briefing before us, Parkway does not allege that, at any point in the proceedings, it had any reason to believe that Harleysville did not intend to invoke the actual repair condition in the insurance policy. Rather, it cites cases – from outside of Tennessee – that hold that an insured does not have to actually repair a damaged property, despite an actual repair clause, if the insurer is guilty of some wrongful conduct or denies liability entirely. *See, e.g., Pollock v. Fire Ins. Exchange*, 423 N.W.2d 234, 237 (Mich. Ct. App. 1988) ("[D]efendant impeded any progress in this matter by refusing to deal with plaintiff prior to her contacting an attorney, by failing to appoint an appraiser after plaintiff's attorney requested they do so and by forcing plaintiff to bring this law suit."); *McCahill v. Commercial Union Ins. Co.*, 446 N.W.2d 579, 585 (Mich. Ct. App. 1988) (Where a jury found that the defendant insurance company was liable for intentional infliction of emotional distress, insured was excused from actual repair due to the impossibility of obtaining financing.); *State Farm Fire & Casualty Ins. Co. v. Miceli*, 518 N.E.2d 357, 362 (Ill. App. Ct. 1987) (When the defendant denied liability and refused to pay, equitable grounds supported waiving the actual repair condition.). In this case, Harleysville never denied liability and advanced considerable

sums to Parkway early in the proceedings. As noted, the previous decision of this court found that Harleysville was not guilty of any wrongful conduct.

At oral argument, Parkway was asked to justify reliance on waiver of the actual repair condition. It directed us to a letter dated November 4, 1998 from a Harleysville adjuster. That letter refers to a compromise offer made in the context of settlement negotiations and indicates that Harleysville had previously paid claims for the purpose of repair before the work had been completed. However it did not, in any way, indicate that Harleysville would forgo the actual repair condition in the insurance agreement. Indeed, the letter specifically reserved Harleysville's rights to any defenses under either the policy or applicable law.

The district court did not err in concluding that equitable estoppel did not prevent Harleysville from relying on the actual repair condition in the policy.

**B. Breach of Contract**

Parkway next contends that the district court improperly dismissed its breach of contract claim. It argues that Harleysville did not pay everything due under the insurance contract. It concedes, however, that the contract claim "hinge[s] on whether Parkway is successful on its equitable estoppel claim." Appellant's Final Brief at 30. Since we deny the equitable estoppel claim, as did the court below, it follows that Harleysville tendered everything due under the insurance contract. Further, while Parkway styles the district court's dismissal of the contract claim as *sua sponte*, we find that Harleysville had moved for summary judgment on the contract claim prior to the appraisal process. While the district court found that summary judgment was inappropriate at that time (and thus submitted the claim to the appraisal process), Parkway had ample opportunity to respond. Therefore, the district court was correct in dismissing the contract claim.

6

**II.**

Parkway next argues that the district court erred in refusing to grant prejudgment interest. In *Harleysville I*, 129 Fed. Appx. at 963-64, we remanded to the district court for consideration of *Myint v. Allstate Ins. Co.* In *Myint*, the Supreme Court of Tennessee held that, "[s]everal principles guide trial courts in exercising their discretion to award or deny prejudgment interest. Foremost are the principles of equity. Simply stated, the court must decide whether the award of prejudgment interest is fair, given the particular circumstances of the case." 970 S.W.2d at 927 (internal citation omitted). The court went on to note that two additional principles sometimes guided the award of prejudgment interest, namely "[1] when the amount of the obligation is certain, or can be ascertained by a proper accounting, and the amount is not disputed on reasonable grounds . . . [2]when the existence of the obligation itself is not disputed on reasonable grounds." *Id.* (internal citations omitted). These latter two grounds, however, are often not dispositive since, "if strictly construed, [they] could prohibit the recovery of prejudgment interest in the vast majority of cases [since] only a liquidated claim . . . can truly be considered an obligation of certain and indisputable amount [and] defendants can usually articulate one good reason for disputing the existence of the obligation." *Id.*

Despite this caveat, the district court spent the bulk of its rather cursory discussion of *Myint* on the certainty of the obligation rather than discussing the equities. In fact, in its only nod to the main thrust of the *Myint* holding the court stated,

> Parkway argues that the Defendant has had the use of these proceeds during this litigation, but Harleysville advanced a substantial amount that Harleysville believed to be the "liquidated" value of Plaintiff's loss in 1998, and tendered the amount of the appraisal award that Parkway refused to accept or rejected such offer. The equities of this action do not weigh in favor of an award of prejudgment interest.

7

Dist. Ct. Mem. at 23-24 (June 23, 2006). Despite this abbreviated discussion, "the decision [should] not be disturbed by an appellate court unless the record reveals a manifest and palpable abuse of discretion. This standard of review clearly vests the trial court with considerable deference in the prejudgment interest decision." *Myint*, 970 S.W.2d at 927.

We hold that the district judge abused his discretion in two minor respects: First, after the appraisal proceedings, which were concluded on September 18, 2003, Harleysville did not immediately pay the undisputed amount; that is, it did not immediately pay the amount determined by the appraiser based on actual cost value less the contractor's overhead and profit (which was still contested). Instead, Harleysville waited over two months, until November 20, 2003, before it moved for leave to deposit the undisputed amount, some $190,000, with the district court. That motion was granted on December 3, 2003. Because that amount was undisputed, we find that prejudgment interest was appropriate.

Second, after this court reversed the district court in *Harleysville I* and found that overhead and profit were due, Harleysville did not petition to rehear this issue nor did it petition the Supreme Court for certiorari review. Therefore, it no longer disputed that amount. At oral argument, however, counsel for Harleysville admitted that it did not pay the overhead and profit award to Parkway for several months and acknowledged that would be appropriate for that period.

Equitable considerations might have persuaded the district court to withhold prejudgment interest for these time periods. If so, however, the district court did not inform us of them. Rather, the only indication we have that the district court considered equity at all is the bare statement that,

"[t]he equities of this action do not weigh in favor of an award of prejudgment interest." Dist. Ct. Mem. at 23-24 (June 23, 2006). That statement is insufficient.[2]

In all other respects, we conclude that the district court was within its discretion in denying prejudgment interest. The amount Harleysville owed Parkway for building and content damage was disputed until the appraisal award was determined and the amount for overhead and profit was disputed until Harleysville failed to appeal our earlier rulings in this case. In addition, we are unaware of any equitable considerations that tip the balance so in favor of Parkway that we should overturn the district court.

## III.

For the above reasons, we **AFFIRM** in part, **REVERSE** in part, and **REMAND** for a determination of prejudgment interest pursuant to this opinion.

---

[2]In the district court's defense, Parkway did not directly request prejudgment interest for these specific time periods. Rather, in all of the papers it filed in the court below, it painted with a broad brush, requesting prejudgment interest from 1998 until November 20, 2003. It did not present to the district court this alternative argument that the appraisal proceedings fixed the amount due, nor did it inform the court that Harleysville delayed payment of overhead and profit after our decision in *Harleysville I*. Indeed, it did not present these arguments to us either. Instead, we raised these arguments at oral argument. Therefore, we reverse the district court on these grounds *sua sponte*.