IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
Assigned on Briefs, December 6, 2006


DUDLEY W. TAYLOR, d/b/a THE TAYLOR LAW FIRM v. JAMES
DALLE, KATHERINE DALLE, MOSHE SHLOUSH, CLARENCE L.
HENDRIX and ROBERT HICKMAN


Direct Appeal from the Chancery Court for Knox County
No. 163496-1    Hon. John Weaver, Chancellor

No. E2006-00634-COA-R3-CV  - FILED FEBRUARY 16, 2007


In this action for a judgment for fees for legal services rendered, the Trial Court entered Judgment for plaintiff and defendants appealed.  We affirm.


**Tenn. R. App. P.3 Appeal as of Right; Judgment of the Chancery Court Affirmed.**


HERSCHEL PICKENS FRANKS, P.J., delivered the opinion of the court, in which D. MICHAEL SWINEY, J., and SHARON G. LEE, J., joined.

Craig J. Donaldson, Greenback, Tennessee, for appellants.

Dudley W. Taylor, Knoxville, Tennessee, for appellee.



**OPINION**


Plaintiff's Complaint alleged that he had performed legal services for defendants, and was owed $35,755.75.

Plaintiff then filed a Motion for Summary Judgment or in the alternative, for Default Judgment, asserting that defendants had been served with process but had failed to answer.  His affidavit attested to the amount of fees owed, and he filed a Statement of Material Facts that the legal

services had been performed, and he advanced expenses on behalf of the defendants, and they were provided with monthly statements of the same. Further the defendants had made one payment of $5,000.00, which had been credited, leaving the balance claimed.

The court entered an Order Granting Partial Summary Judgment, finding the defendants had failed to file any countervailing affidavits, reserving the issue of whether his fees were reasonable. Defendants then asked the Court to allow them to present their defenses, and they filed numerous affidavits.

Apparently, the Court's earlier Order granting partial summary judgment was reconsidered, because an evidentiary hearing was held on the issues on February 27 and 28, 2006. Following the evidentiary hearing, the Court entered a Final Judgment, incorporating its findings, conclusions and opinion. In its findings, the Court noted that the dispute did not appear to be whether the fees were reasonable except for defendants' complaint that plaintiff did not disclose or communicate his hourly rate to the defendants. The Court noted that defendants had argued that most of the services were attributable to the corporation, which the plaintiff had settled with the corporation for $15,000.00.

The Court found that the individual defendants did not negotiate the fee agreement with plaintiff, but rather the fee agreement was negotiated by the corporation's attorney and the individual defendants' attorney. The Court said the plaintiff testified that he told the attorneys at their initial meeting that he believed the matter could be resolved for less than $10,000.00, but that he billed monthly and they could discharge him at any time. The Court recited that corporate counsel "eventually testified that the plaintiff's fees were capped at $10,000.00, subject to the corporation's permission to exceed that amount, and that the plaintiff agreed that there would be no cost to the individual defendants." The Court said that Charles Kite, one of the attorneys for the individual defendants, testified that plaintiff was to have a $10,000.00 retainer but could not remember anything about the fees of the individual defendants, but when confronted with his affidavit, he agreed with the language that the corporation was to pay the fees.

The Court found that plaintiff's fees exceeded $10,000.00 within a very short time, and that the plaintiff had been given incomplete facts about the litigation, and that the scope of the representation broadened. The Court found that plaintiff began corresponding with the corporate attorney about his bill in February, 2004, and that this attorney stated in a letter dated March 11, 2004, that no one had problems with Taylor's work. He realized that suit modifications "may have increased the scope of work beyond that originally contemplated." The Court also observed that the plaintiff continued to represent the defendants and send monthly bills for months after this correspondence, but when the plaintiff attempted to meet with defendants, counsel was unresponsive and arrangements could not be made.

The Court concluded that the evidence, including plaintiff's testimony, the engagement letters and monthly bills, weighed against the testimony of the defendants, and preponderated in favor of the plaintiff. The Court explained that the evidence showed that all

defendants were responsible for plaintiff's bills, and that his fee was not capped at $10,000.00. Further, that plaintiff performed the services over a considerable period of time, and the Court noted that of the individual defendants, only Mr. and Mrs. Dalle testified.

The Court then entered Judgment against the individual defendants for $20,000.00, taxed costs equally between the parties, and certified the Judgment as final pursuant to Tenn. R. Civ. P. 54.02. The parties raise these issues:

1. Whether the appeal should be dismissed for appellants' alleged failure to comply with the rules of this Court?

2. Whether the trial court erred by not concluding that Taylor's release of Aurora released appellant, and whether appellants can rely on the release when they failed to plead release as an affirmative defense?

3. Whether the trial court erred by entering a judgment for Taylor for attorney's fees where he did not disclose his hourly rate as mandated by Rule 1.5(b) of the disciplinary rules, and where Taylor did not plead nor rely on the theory of quantum meruit?

4. Whether the evidence preponderates against the trial court's finding that Taylor did not agree to represent appellants at no cost to them?

5. Whether the trial court erred in failing to award Taylor's full amount of fees and expenses incurred in the representation of appellants, and in failing to award prejudgment interest?

Appellee argues that this case should be dismissed for "continuing failure to comply with the Rules of this Court", pointing to the fact that the appellants repeatedly missed filing deadlines when filing their transcript and brief. While appellants did files these items in an untimely manner, which we do not condone, the filings were ultimately made and we elected to allow the appeal to proceed.

Appellants argue that since appellee nonsuited the corporation based upon its payment of $15,000.00, the other defendants should be released as well based on common law theory. Appellee argues that defendants failed to plead such an affirmative defense. We hold that appellants raised this issue but the Trial Court found that plaintiff did not intend to release the individual defendants when he nonsuited the corporation.

Appellants counter that the nonsuit, without specifically reserving claims against the other defendants operates to automatically release the other defendants as well, and cite the case of *Kreutzmann v. Bauman*, 609 S.W.2d 736 (Tenn. Ct. App. 1980) and to Tenn. Code Ann. §24-7-106.

Tenn. Code Ann. § 24-7-106 provides:

> All receipts, releases, and discharges in writing, whether of a debt of record or a contract under seal, or otherwise, shall have effect according to the intention of the parties thereto. However, the remittance and acceptance of a check or other instrument bearing on its face words that it is payment or satisfaction in full of a debt or obligation shall not be considered conclusive evidence of an intention that the debt or obligation for which the same is given be discharged or released; provided, that the remittee of such instrument tenders back to the remittor the funds represented by such instrument.

In *Kreutzmann*, we explained that the statute now codified at Tenn. Code Ann. §24-7-106, was originally enacted in 1858, and "changed the old technical rule of the common law, whereby the release of one co-obligor automatically released another co-obligor." *Id*. at 737-738. We went on to state:

> Since 1858 the law has been in Tennessee that the release of one co-obligor on a contractual debt does not release another co-obligor, unless the consequent release of the other is the intent of the parties to the release instrument.

*Id*. at 738.

We reject appellants' argument that in the absence of a written release which expressly states that co-obligors are still bound, then the "old common law"[1] would control and dictate that the co-obligors are automatically released. A plain reading of the statute and case law does not lead to such a result. The statute simply says that a release "shall have effect according to the intention of the parties thereto", and the Chancellor found that appellee did not intend to release the other parties, and the evidence does not preponderate against the Chancellor's finding. Tenn. R. App. P. 13(d).

Appellants next argue that the Trial Court erred in awarding attorney's fees because appellee did not disclose his hourly rate, and assert that RPC Rule 1.5(b) requires disclosure of an attorney's hourly rate, and insist on the authority of *Fell v. Rambo*, 36 S.W.3d 837 (Tenn. Ct. App. 2000), appellee's contract with defendants cannot be enforced due to the violation of the Rule.

RPC Rule 1.5(b) states, "[w]hen the lawyer has not regularly represented the client, the basis or rate of the fee shall be communicated to the client, preferably in writing, before or within a reasonable time after commencing the representation." In this case, appellee testified that he disclosed his hourly rate to Stephen A. Irving who was corporate counsel for the corporation, at their initial meeting, and while Dalle testified that he was not made aware of this disclosure, when

---

[1] This, of course, ignores the fact that this Court recognized in *Kreutzmann* that the statute had the effect of changing the common law rule.

appellee sent his bills in February, the hourly rate was shown on the face of the bills. Therefore, appellee communicated his hourly rate "within a reasonable time after commencing the representation."

In this case, there was no basis to refuse to enforce the contract between plaintiff and defendants. There was no evidence that it was not negotiated in good faith, and there was no evidence that the lawyer breached his fiduciary obligation to the clients. Moreover, appellants did not question the reasonableness of the fee charged by appellee, they simply argued that they thought it was "capped" at $10,000.00.

Finally, appellants argue that the Trial Court erred in charging the fee to the individuals, since the individuals testified that their understanding was that appellee would represent them at no cost. The evidence establishes that the individuals signed a fee contract with appellee by signing the engagement letter, and nowhere does the letter state that the individuals will not be charged any part of the fee. In fact, the letter sets forth how fees and expenses would be billed, and states that the balance would be due promptly each month. Each individual defendant signed and returned this letter, and we hold the Trial Court properly enforced the fee contract. This issue is without merit.

Appellee argues that the Trial Court should have awarded him the full amount of his fee, and also failed to award pre-judgment interest. The Trial Court awarded $20,000.00 which was $2,576.00 less than appellee claimed was due. As we have recognized:

> The reasonableness of a requested fee depends on the facts of each case. Accordingly, appellate courts review a trial court's decision regarding attorney's fees using the abuse of discretion standard.

*Fell v. Rambo*, 36 S.W.3d 837, 853 (Tenn. Ct. App. 2000)(citations omitted). There is no showing in this case that the Trial Judge abused his discretion in its award of $20,000 as a reasonable fee.

Regarding prejudgment interest, appellee asserts that his engagement letter discloses that interest shall be charged at 1% per month, and that the Trial Court erred in failing to award that interest.

In *Myint v. Allstate Ins. Co.*, 970 S.W.2d 920, 927 (Tenn. 1998), the Supreme Court explained that an award of prejudgment interest "is within the sound discretion of the trial court and the decision will not be disturbed by an appellate court unless the record reveals a manifest and palpable abuse of discretion . . . . This standard of review clearly vests the trial court with considerable deference in the prejudgment interest decision. Generally stated, the abuse of discretion standard does not authorize an appellate court to merely substitute its judgment for that of the trial court. " (citations omitted).

Appellee's claim for prejudgment interest is not based on the statute, but rather it is

a provision of the contract for attorney's fees. The basis of the Trial Court's award of attorney's fees was the appellee's contract with the clients, and we have concluded that the judgment awarded under the contract was reasonable, taking into account all the provisions of the appellees' contract. The Trial Court did not abuse his discretion in the award, and we find this issue to be without merit.

We affirm the Judgment of the Trial Court and remand, with the cost of the appeal assessed one-half to Dudley Taylor and one-half to the defendants, jointly and severally.

_____
HERSCHEL PICKENS FRANKS, P.J.