IN THE COURT OF APPEALS OF TENNESSEE
AT JACKSON
August 16, 2007 Session

## GARY WEAVER, ET AL. V. THOMAS R. McCARTER, ET AL.

**A Direct Appeal from the Chancery Court for Shelby County**
**No. 98-0425-3      The Honorable D. J. Alissandratos, Chancellor**

**No. W2006-02058-COA-R3-CV - Filed October 8, 2007**

This is the second appeal of this breach of contract case. In *Gary Weaver, et al v. Thomas R. McCarter, et al*, No. W2004-02803-COA-R3-CV, 2006 WL 1529506 (Tenn. Ct. App. June 6, 2006), this Court affirmed the trial court's grant of summary judgment in favor of plaintiffs and remanded the case "for further clarification concerning the amount of damages awarded with respect to plaintiff's claims of negligence *per se,* negligent misrepresentation, and breach of contract." Upon remand, the trial court entered judgment against the defendants jointly and severally and in favor of plaintiffs for compensatory damages and pre-judgment interest. Finding that the trial court abused its discretion in awarding pre-judgment interest, we reverse that portion of the Judgment. We reverse in part and affirm in part.

**Tenn. R. App. P. 3; Appeal as of Right; Judgment of the Reversed in Part, Affirmed in Part**

W. FRANK CRAWFORD, P.J., W.S., delivered the opinion of the court, in which DAVID R. FARMER, J. and HOLLY M. KIRBY, J., joined.

Charles F. Morrow and Elizabeth E. Chance of Memphis, Tennessee for Appellant, Coldwell Banker Hoffman-Burke, Inc., Realtors

Robert L. Moore and Dawn Davis Carson of Memphis, Tennessee for Appellant, Jim Perdue

Henry C. Shelton, III and Tricia T. Olson of Memphis, Tennessee for Gary and Gail Weaver

### OPINION

The relevant facts and procedures are set out in this Court's Opinion in the previous appeal, *Gary Weaver, et al v. Thomas R. McCarter, et al*, No. W2004-02803-COA-R3-CV, 2006 WL 1529506 (Tenn. Ct. App. June 6, 2006). The Opinion, filed June 6, 2006, states in pertinent part:

This suit arises from a contract to sell Gary and Gail Weaver's ("the Plaintiffs") house ("the Hacks Cross House") located on Hacks Cross Road in Memphis, Tennessee. On November 1, 1994, Thomas McCarter ("Defendant McCarter") approached the Plaintiffs with an offer to purchase the Hacks Cross House for $680,000 in cash. The Plaintiffs agreed and subsequently entered into a verbal contract with Defendant McCarter for a cash sale. However, Defendant McCarter never consummated the sale and, thus, the transaction never closed.

In February 1997, the Plaintiffs purchased a second home located on Langston Cove ("the Langston Cove House") and soon after listed the Hacks Cross House with Jim Perdue ("Defendant Perdue") at Coldwell Banker Hoffman-Burke, Inc. Realtors ("Defendant CBHB"). On August 27, 1997, Defendant Perdue brought the Plaintiffs a written offer from Janet Hunter to purchase the Hacks Cross House for $575,000. The Plaintiffs eventually accepted a counter-offer of $595,000, with $10,000 in escrow, and signed a contract of sale (hereinafter referred to as "the sale contract") with Janet Hunter. Closing was set for September 30, 1997. However, the $10,000 escrow check bounced on September 17, 1997, and Defendants CBHB received notice of this on September 30, 1997. Furthermore, the sale contract was not signed by Janet Hunter, but rather Janet Hunter's name was forged by Chip Hunter ("Defendant Hunter"), Janet Hunter's husband, without Janet Hunter's knowledge or permission. Defendant Hunter signed Janet Hunter's name to the sale contract at the request of Defendant McCarter and while in the presence of Defendant Perdue. The Plaintiffs did not learn of the bounced escrow check or the forged sale contract until the closing date, when the Plaintiffs' attorney checked on the escrow funds and Defendant Perdue informed the Plaintiffs' closing attorney of the forgery. As a result, the closing did not occur on September 30, 1997.

Subsequently, on October 2, 1997, Defendant McCarter, in a memorandum to Defendant Perdue, affirmed that he was the true party who had made the offer on August 29, 1997, to purchase the Hacks Cross House for his daughter, Janet Hunter. While Defendant McCarter indicated a desire to honor the sale contract, he informed Defendant Perdue that his funding for the purchase would not be available until October 8, 1997. Although reserving their rights under the original sale contract, the Plaintiffs informed Defendant McCarter that they were willing to close the transaction if his funding came through by October 8, 1997. Despite this, the closing did not take

place on October 8, due to a continued lack of funding. At that time, Defendant McCarter promised to fund the transaction on October 15, 1997. However, on that date, he delivered a $10,000 check to Defendant CBHB and stated that he no longer wanted to purchase the Hacks Cross House. The Plaintiffs subsequently demanded that Defendant Perdue pay them Defendant McCarter's $10,000 in earnest money, cancelled their listing agreement with Defendant CBHB, and placed the Hacks Cross House back on the market. However, the Hacks Cross House did not sell and the Plaintiffs eventually sold the Langston Cove House and moved back to the Hacks Cross House.

On May 11, 1998, the Plaintiffs filed suit against Defendants McCarter, CBHB, Perdue, and Hunter, seeking damages for negligence per se, negligent misrepresentation, breach of contract, and fraud. Specifically, the Plaintiffs asserted that Defendants Perdue and CBHB were negligent per se for violating section 62-13-403 of the Tennessee Real Estate Broker License Act of 1973. The Plaintiffs further asserted that Defendant Perdue was also negligent per se because he violated section 62-13-404 of the Brokers Act, which provides for duties of reasonable care and loyalty between real estate brokers and their clients; and that Defendant Perdue was further guilty of negligent misrepresentation for failing to exercise reasonable care in communicating information to the Plaintiffs. The Plaintiffs next asserted a breach of contract claim against Defendant McCarter arguing that, although Defendant McCarter did not actually sign the contract, he had previously entered into an oral agreement, through Defendant Perdue, with the Plaintiffs to purchase their house, but failed to follow through with the purchase. Finally, the Plaintiffs asserted a fraud complaint against Defendants McCarter, Hunter, and Perdue, arguing that all three parties engaged in dishonest practices with a deceptive intent in order to induce the Plaintiffs to enter into an illusory contract to sell their house, which the Plaintiffs subsequently relied upon to their detriment. As remedies, the Plaintiffs sought either specific performance by Defendant McCarter or a judgment for $200,000 in compensatory damages against all defendants jointly and severally, along with punitive damages.

In response to the Plaintiffs' claims, Defendants CBHB and Perdue filed an answer arguing that Plaintiffs failed to assert a claim upon which relief could be granted. Defendant CBHB also asserted a counter-claim against the Plaintiffs alleging that they were entitled to split the $10,000 in earnest money with the Plaintiffs. In turn, Defendant Hunter denied forging Janet Hunter's signature and

asserted the statute of frauds as an affirmative defense. Defendant McCarter denied being the contractual purchaser of the house and further asserted the statute of frauds as an affirmative defense. Defendant McCarter also asserted a counter-claim against Defendant Perdue, Defendant CBHB, and the Plaintiffs seeking the return of the $10,000 placed in escrow arguing that Defendant McCarter entered into no enforceable contract of sale and, thus, no legal basis existed for the continued retention of such funds. Defendants CBHB and Perdue and the Plaintiffs responded to Defendant McCarter's counter-complaint and asserted that an enforceable contract of sale did exist.

On July 13, 2000, the Plaintiffs filed a Motion for Summary Judgment against all Defendants. Defendant McCarter subsequently filed a motion seeking a directed verdict in relation to the return of the $10,000 escrow money. (FN1) On January 22, 2001, the trial court entered an order granting summary judgment in favor of the Plaintiffs against Defendants McCarter, Hunter, Perdue, and CBHB. The court also denied Defendant McCarter's directed verdict motion and further ordered that Defendant CBHB tender the $10,000 in earnest money to the Plaintiff, with said amount being credited against the damage award against Defendant McCarter. The amounts of compensatory and punitive damages were reserved for further hearing; however, the trial court did state that while all judgments rendered herein and subsequently by the Court shall be joint and several as against all Defendants, that among the Defendants the fault shall be apportioned [forty-five] percent (45%) to [Defendant] McCarter, ten percent (10%) to [Defendant] Hunter, and [forty-five] percent (45%) to Defendants [Perdue and CBHB].

> (FN1) Pursuant to Rule 50.01 of the Rules of Civil Procedure, a party may only move for directed verdict "at the close of the evidence offered by an opposing party or at the close of the case." Tenn. R. Civ. P. 50.01 (2005).

Nearly two years after the trial court's grant of summary judgment, Defendant CBHB filed a motion to reconsider, which the trial court denied.

Prior to the trial on damages, several events occurred which ultimately affected the trial court's ability to assess damages. First, on May 5, 2004, Defendant Perdue filed a Plea of Bankruptcy stating that he had filed bankruptcy and that, pursuant to an Order Modifying Discharge Injunction issued by the United States Bankruptcy Court for the Western District of Tennessee, the trial court would only be

allowed to proceed to a judgment against Defendant Perdue for any causes of action *except* acts of fraud, fraudulent misrepresentation, or other cause of action which would permit the denial of discharge pursuant to 11 U.S.C. § 727 or render the judgment nondischargeable pursuant to 11 U.S.C. § 523. The trial court granted this plea. In addition to Defendant Perdue's filing of bankruptcy, Defendant McCarter died (FN2) and Defendant Hunter also filed bankruptcy. As a result, at trial, the Plaintiffs sought to collect damages arising from Defendants CBHB and Perdue's negligence per se and negligent misrepresentation, as well as Defendant McCarter's breach of contract. (FN3)

> (FN2) We find no indication in the record of a substitution of parties for Defendant McCarter pursuant to Rule 25.01 of the Tennessee Rules of Civil Procedure.

> (FN3) In their brief, the Plaintiffs assert that at the trial on damages, they proceeded only against Defendants CBHB and Perdue "and sought damages only under the Tennessee Real Estate Broker[] Act of 1973 and for negligence." However, a review of the trial transcript reveals that the Plaintiffs also sought damages for their breach of contract claim against Defendant McCarter, although the Plaintiffs admitted that Defendant McCarter died apparently leaving no estate to satisfy a judgment and that "no formal Notice [or] substitution" was made pursuant to Rule 25.01.

> In relation to damages suffered due to fraud, neither the Plaintiffs' brief nor the record in this case supports the conclusion that damages were awarded based upon fraud in this case. At trial, the Plaintiffs' counsel admitted that no judgment for fraud was awarded against Defendants CBHB and Perdue. Furthermore, the Plaintiffs indicated that they were unable to pursue damages against Defendant Hunter due to his filing Chapter 7 bankruptcy. Finally, a review of the record and transcript in this case fails to show that damages were awarded for any fraud alleged against Defendant McCarter.

At the trial on damages, the parties presented testimony of Plaintiff Gary Weaver and John Jordan, a real estate appraiser who had appraised the Plaintiffs' property in 1997, near the time the sale contract was signed. The Plaintiffs asserted that the proof showed that they had suffered $300,000 in damages as a result of the Defendants conduct. After hearing the proof, the trial court first held the Plaintiffs would receive no damages in relation to their purchase and subsequent sale of the Langston Cove House because the purchase of this property occurred prior to the Plaintiffs' contract to

sell the Hacks Cross House and, thus, damages resulting from the purchase and sale of the Langston Cove home were not reasonable consequential damages flowing from the Defendants' actions in regard to the Hacks Cross House. As a result of this finding, the trial court focused its award of damages on the following issues: 1) the contract price for the Hacks Cross House minus the sales commission, 2) the duty of the Plaintiffs to mitigate damages, and 3) additional expenses incurred as a result of the Defendants' actions. After hearing the evidence submitted at trial, the trial court entered an Order of Judgment providing as follows:

> Plaintiffs should have a judgment, against Defendants, pursuant to their apportioned fault, in the amount of $55,600.00 for lost value of real estate; $3,000.00 for 1998 and $3,000.00 for 1999 for necessary maintenance costs, and $20,000.00 for attorneys fees, with prejudgment interest computed at 10% per year on each amount from the date incurred, or, in the case of attorneys fees, from the date paid, and statutory cost of this case. [Defendants] Perdue and [CBHB] have been apportioned fault in the amount of forty-five percent (45%), and judgment is awarded against these Defendants specifically in the amount of $60,118.53, and forty-five percent (45%) of statutory costs.

The Plaintiffs subsequently filed a Motion to Alter or Amend Judgment arguing that the trial court should apportion fault jointly and severally among the Defendants. The trial court granted the Plaintiffs' motion and, on October 4, 2004, entered an Amended Order of Judgment stating that the Plaintiffs should have a judgment against Defendants (except Defendant Chip Hunter, whose bankruptcy injunction precludes judgment, and Defendant[] Perdue, whose judgment is limited by the Order Modifying Discharge Injunction, entered on May 21, 2003, in the Bankruptcy Court for the Western District of Tennessee Western Division, Cause No. 98-21718L)[], jointly and severally, in the amounts of $55,600.00 for lost value of real estate; $3,000.00 for 1998 and $3,000.00 for 1999 for necessary maintenance costs, and $20,000.00 for attorneys fees, with prejudgment interest computed at 10% per year on each judgment from the date incurred, or, in the case of attorneys fees, from the date paid, for a total judgment of $134,225.06 and the costs of the cause.

> IT IS THEREFORE ORDERED judgment shall be entered in favor of Plaintiffs Gary and Gail Weaver against Defendants Thomas McCarter, (FN4) Jim Perdue and Coldwell Banker Hoffman Burke

Realtors, jointly and severally, in the amount of $134,225.06 and the costs of the cause, for which let execution issue if necessary. Judgment as to Defendant Perdue is limited by the Order Modifying Discharge Injunction . . . .

> As previously noted, we find no indication in the record of a substitution of parties for Defendant McCarter pursuant to Rule 25.01 of the Tennessee Rules of Civil Procedure. Despite this, the Defendants nonetheless received a judgment against Defendant McCarter.

Defendants Perdue and CBHB appeal.

***Weaver, et al v. McCarter, et al***, 2006 WL 1529506 at *1 - *4.

This Court affirmed the trial court's grants of summary judgment, and they are not issues on this appeal. This appeal involves only issues concerning the damages awarded.

Upon remand, the trial court held a hearing on August 7, 2006. On August 15, 2006, the trial court filed an Order of Judgment on Remand which states:

> This cause came on to be heard the 7th day of August, 2006, upon opinion of the Court of Appeals of Tennessee of June 6, 2006, remanding this case to determine the measure of damages, if any, to be assessed among Defendants Coldwell Banker Hoffman Burke, Jim Perdue and Thomas R. McCarter upon argument of counsel for Plaintiff, Coldwell Banker Hoffman Burke and Jim Perdue adduced in open Court, based upon all of which,

> IT APPEARING TO THE COURT, for the reasons set forth in the Court's oral findings of fact and conclusions of law pursuant to Tennessee Rule of Civil Procedure 52, which the Court hereby incorporates by reference, that the Court should measure damages in this case of negligence per se and negligent misrepresentation by the same process used to measure damages resulting from the breach of contract, which permits an award of prejudgment interest, and

> IT FURTHER APPEARING TO THE COURT that because Defendants' torts preceded the breach of contract, thus causing Plaintiffs to enter into a contract they otherwise would not have, 100% of the damages set forth below should be assessed against Defendants, Perdue and Coldwell Banker, solely for their torts, and

IT FURTHER APPEARING TO THE COURT that each defendant is liable for the entire amount of damages due Plaintiff for each separate tort committed by each such Defendant, but that Plaintiffs may only recover the amount of damages set forth below (as they may not recover double or quadruple the amount of such damages even though each Defendant committed two torts each), the torts committed by Defendants Coldwell Banker Hoffman Burke and Jim Perdue damaged Plaintiffs in the amounts of $55,600.00 for lost value of real estate; $3,000.00 for 1998 and 43,000.00 for 1999 for necessary maintenance costs, with prejudgment interest computed at 10% per year on each amount from the date incurred, and

IT FURTHER APPEARING TO THE COURT that Plaintiff's renewed request for attorneys' fees as an element of tort damages in this case based upon the availability of such a remedy for breach of contract in this case may not be granted due to the Order of the Court of Appeals in this case,

IT IS THEREFORE ORDERED that judgment shall be entered in favor of Plaintiffs, Gary Weaver and Gail Weaver, against Defendants, Jim Perdue and Coldwell Banker Hoffman Burke Realtors, jointly and severally, for compensatory damages with prejudgment interest through August 10, 2006, in the amount of $97,282.30 ($55,600.00 for los value of real estate, $3,000.00 for 1998 and $3,000.00 for 1999 for necessary maintenance costs and $35,682.30 for prejudgment interest (upon which sum interest accrues per day in the amount of $16.88), and the costs of the cause, for which let execution issue of necessary. Judgment as to Defendant Perdue is limited by the Order Modifying Discharge Injunction, entered on May 21, 2003, in the Bankruptcy Court for the Western District of Tennessee, Western Division, Cause No. 982178L, and

IT IS FURTHER ORDERED that Plaintiffs' request for a judgment for attorneys' fees should be, and is hereby, denied.

Defendants Perdue and Coldwell Banker Hoffman Burke Realtors appeal and raise three issues for review as stated in their brief:

1. Whether the trial court erred in assessing 100% of the damages set forth in the order of August 15, 2006, against defendants Perdue and Coldwell Banker Hoffman-Burke, solely for their torts and ignoring the breach of contract by defendant McCarter.

2. Whether the trial court erred in holding the defendants jointly and severally liable for the amount the judgment.

3. Whether the trial court erred in assessing prejudgment interest against the Defendants, Perdue and Coldwell Banker.

Perdue and Coldwell-Banker first assert that the trial court erred in its award of damages to the Plaintiffs. Specifically, they assert that the only party to breach the contract was McCarter and that damages should be assessed only against him. Although that may very well be, the fact that McCarter had no damages assessed against him would not negate the justification for damages awarded to the Plaintiffs against the Defendants, Perdue and Coldwell Banker. The trial court made it clear on remand that the torts committed by these Defendants preceded the breach of contract and the torts caused the Plaintiffs to enter into a contract that they otherwise would not have made. The evidence does not preponderate against the trial court's findings that the torts committed by these Defendants caused damages to the Plaintiffs herein. The Appellants seem to imply that the trial court assessed damages against Perdue for breach of contract. That is not the case. There is no allegation against Perdue that he breached any contract or was a party to a contract, and the trial court found only that McCarter and Hunter could be liable for breach of contract.

Because this case was tried by the court sitting without a jury, we review the case *de novo* upon the record with a presumption of correctness of the findings of fact by the trial court. Unless the evidence preponderates against the findings, we must affirm, absent error of law. Tenn. R. App. P. 13(d). In the case before us, the evidence does not preponderate against the trial court's finding that the Defendants, Perdue and Coldwell Banker, were guilty of negligence which directly and proximately caused the damages assessed against them in favor of the Plaintiffs, the Weavers.

Defendants next assert that the trial court erred in assessing the liability for damages against Perdue and Coldwell Banker jointly and severally. In this case, Coldwell Banker and Perdue each participated in the negligent misrepresentation and thus contributed to the end result. Master and servant are jointly and severally liable in damages where they jointly breach some duty which they owe to a third person and damages result therefrom. ***See Campbell v. Campbell***, 199 S.W.2d 931 (Tenn. Ct. App. 1946).

Coldwell-Banker raises the single issue of whether the trial court erred in assessing an award of pre-judgment interest. It is well settled that an award of pre-judgment interest is within the sound discretion of the trial court. ***See, e.g., Myant v. Allstate Ins. Co.***, 970 S.W.2d 920 (Tenn. 1998). In the instant case, Plaintiffs occupied the property which is the subject of this lawsuit and did not suffer any loss of use or funds in the course of the litigation. In sum, Plaintiffs did not suffer any out-of-pocket loss, and the Defendants in the case did not have the use of any of Plaintiffs' money. Under the circumstances of this case, prejudgment interest is not required as an equitable consideration and, therefore, should not have been awarded.

Accordingly, the judgment of the trial court awarding prejudgment interest is reversed, and the judgment of the trial court is affirmed in all other respects. Costs of the appeal are assessed one-half to Appellants, Coldwell Banker Hoffman-Burke, Inc., and Jim Perdue and one-half to Appellees, Gary Weaver and Gail Weaver.

_____
W. FRANK CRAWFORD, PRESIDING JUDGE, W.S.