IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs at Knoxville June 24, 2015

**STATE OF TENNESSEE v. ERIC JAMES MILLER**

**Appeal from the Circuit Court for Robertson County**
**No. 2014-CR-467     John H. Gasaway, III, Judge**

_____

**No. M2014-02163-CCA-R3-CD – Filed July 17, 2015**
_____

Defendant, Eric James Miller, appeals his six-year sentence of confinement for theft of property valued over $1,000, arguing that the trial court abused its discretion in denying alternative sentencing.  Because the sentencing judge properly considered all sentencing factors and the purposes and principles of the sentencing statutes, the judgment of the trial court is affirmed.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

TIMOTHY L. EASTER, J., delivered the opinion of the Court, in which ALAN E. GLENN and ROBERT H. MONTGOMERY, JR., JJ., joined.

Roger E. Nell (on appeal and at trial), District Public Defender, and Collier W. Goodlett (at trial), Assistant District Public Defender, for the appellant, Eric James Miller.

Herbert H. Slatery III, Attorney General and Reporter; Meredith DeVault, Senior Counsel; John W. Carney, District Attorney General; and Jason White, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

*Facts and Procedural Background*

This is Defendant's direct appeal of the sentence imposed by the trial judge in the Robertson County Circuit Court for the offense of theft of property valued over $1,000. Defendant appeals the denial of alternative sentencing.

On July 17, 2014, a Robertson County grand jury returned a "superseding sealed" indictment against Defendant for: (1) fraudulently altering a vehicle identification number ("VIN"), (2) theft of property valued over $1,000, (3) resisting arrest, and (4) felony escape. On July 30, 2014, the State filed a notice of intent to seek enhanced punishment as a Range II, multiple offender. On August 11, 2014, after a jury was selected for trial, Defendant entered a best interest guilty plea to the theft charge, a class D felony, as a Range II, multiple offender, with the trial court to determine the length and manner of service of the sentence. The remaining counts were dismissed.

During the guilty plea proceedings, the prosecutor provided the following factual basis for the plea:

[O]n February 25th, Mr. Miller showed up at Rawls Auto Salvage, and he was in a pickup truck owned by a Mr. Fitz. A Ms. Jamie Hannah was with Mr. Fitz and Mr. Miller. Mr. Miller was driving. Mr. Fitz would say that it was his truck, that Mr. Miller had asked to use it, and that Mr. Miller had showed up at his house earlier that morning and asked to borrow the truck and then he came back about an hour later with the car on a car dolly and then asked them to . . . go with him or use the truck to go sell it, and Mr. Fitz said he wouldn't allow him to, but he wanted to go with him. So then . . . Mr. Miller drove it here to Rawls.

When he went into Rawls, he went in and gave the clerk his ID and filled out the paperwork. As the clerk was looking at the VIN, the clerk noticed something suspicious about the VIN, that it looked like it was kind of bolted on there and not consistent with how it is usually placed on there. At that point, [the clerk] called for Mr. Rawls and Mr. Rawls came down and made the same observation and at that point, called for . . . Detective Burnett with Springfield Police Department, who in turn called the Sheriff's Department due to Mr. Rawls's business is just right in the county.

Upon arriving, Detective Hudgens observed the car, observed that a plate had been put over the original VIN number and that the VIN had been altered or that the fake plate had been put over the original one for that plate and then at that point, researched the car to see if it was stolen and it had not been reported stolen yet. Two days later, he researched it again, and indeed it had been stolen.

The victim, Ms. Hess, who is here in Court, would say that it was her car and . . . that on Sunday night it had broke[n] down, and she had been having trouble with the alternator[.] [I]t was broke[n] down on

Interstate I-40 around the 206 mile marker, which . . . is right by the Briley Parkway, I-40 West interchange, . . . and Ms. Hess would say that she got a ride home and the next day called a tow company. They couldn't meet her until Tuesday and she got a ride to work and a ride home from work on Monday, and on her way home, she did see the car sitting there.

Tuesday morning, . . . a friend and her went back out and they saw the car sitting there around eight o'clock. When they went back at one o'clock to meet the wrecker, the car was gone. She then immediately started searching tow lots, thinking it had been towed and started searching tow lots and so forth, and when she got nowhere, she then called and made a police report on the car[.] [S]he has . . . the VIN from the insurance card that she had and they matched the VIN that Detective Hudgens saw on the car.

Also, Mr. Fitz would testify that the place where Mr. Miller met up with him was at his mom's house on Highway 12, which is right by the Briley Parkway intersection. That for the hour that Mr. Miller was gone with his car, the testimony would be clear that from where they were on the Briley Parkway intersection to where Ms. Hess's car was abandoned on I-40 is about five miles, plenty enough time for Mr. Miller to leave Mr. Fitz's house that morning and go get the car and come back and get Mr. Fitz to take him to Rawls.

On October 3, 2014, the trial court held a sentencing hearing. The presentence report was admitted into evidence. Defendant's criminal history, as evidenced by the presentence report, began with a misdemeanor DUI conviction when Defendant was twenty-one years old. When Defendant was twenty-three years old he was convicted of assault, resisting arrest, another assault, evading arrest, and vandalism.[1] When Defendant was twenty-five years old, he was convicted of driving on a revoked license, assault, evading arrest, and DUI. When Defendant was twenty-seven years old he was convicted of failure to appear, possession of burglary tools, and theft. When Defendant was twenty-eight years old, he was convicted of theft, driving without a license, assault, resisting arrest, and criminal impersonation. All of these convictions were for misdemeanors except for one felony evading arrest conviction.

The State introduced certified copies of previous convictions for introduction of contraband into a penal institution, a class C felony, entered on April 13, 2012, and theft of property valued over $500, a class E felony, entered on January 30, 2014, the month

---

[1] We also note a misdemeanor conviction for domestic violence, which was not mentioned by the sentencing judge. This offense does not appear to have been probated.

before the offense date in this case. The State also entered a copy of an order entered on July 24, 2013, finding Defendant in violation of the terms of Community Corrections. Because Defendant had been previously convicted of three felonies, and because the parties agreed, the sentencing judge found Defendant to be a multiple offender.

Defendant was thirty-one years old at the time of the sentencing hearing with experience as a mechanic. He said that he was medicated as a child for ADD and ADHD. He began "self-medicating" once he stopped receiving prescriptions when he was sixteen years old. Defendant testified that he has been drinking alcohol since he turned twenty-one years old, with his longest period of abstinence being six months. He admitted to use of various illegal drugs and a cocaine addiction. Defendant's last use of cocaine was in July 2013, when he was arrested. Defendant then began using illegal pills and heroin daily until the time of the offense in this case. Defendant acknowledged that the past few years of his life consisted of being "in and out of jail," where, upon release, he would "fall right back into [his] addiction and do the same thing." Initially, Defendant believed that he could overcome his substance addiction on his own. However, after his most recent release from jail, Defendant said that he attempted sobriety through a halfway house in Nashville, but this effort was unsuccessful as he was discharged for violating the house's rules. Defendant was looking for a rehabilitation program when he was arrested on the charges brought in this case.

Defendant said that he desired long-term rehabilitation to be part of his sentence because he believed that a structured treatment program would help him "actually dig [in]to the problem." Defendant explained:

> I am tired of coming to jail. I was trying to get help while I was out this time. I know with my own will and with my own tools that I have got out there, it wasn't enough. I need to get to the bottom of why I use and why I turn to drugs and instead of doing the right thing. I mean, I have lived a normal life before, but it seems like since I was about twenty-one, it's just been spiraling downhill and . . . anybody that knows me will tell you I am a good person, [but] it's just when I get to drinking and get to using, I make stupid decisions and the next thing you know, it's too late. Here I am back in jail.

During cross-examination, Defendant admitted that he was sentenced to Community Corrections in 2012 by the Circuit Court for Cheatham County. When he violated the terms of Community Corrections by committing new crimes, the Circuit Court for Cheatham County only partially revoked his sentence to Community Corrections, and he was also consecutively sentenced to Community Corrections for the offenses that gave rise to the violation by the Circuit Court for Franklin County. He was still on Community Corrections when he committed the offenses in this case.

- 4 -

Laura Cox testified that she was Defendant's mother. She said that she had "tried for years" to get Defendant accepted into a "real" rehabilitation program and had contacted multiple programs. However, many of the programs were too expensive and others did not have room available for Defendant. She "spent a lot of time on the phone" trying to get Defendant into rehabilitation programs the last time he was released from incarceration. She and Defendant mistakenly believed that the halfway house into which Defendant moved was a treatment program, but it was not. On occasion, Defendant had attended Alcoholics Anonymous meetings. Ms. Cox stated that Defendant's situation was "heartbreaking" because he had been "trying very hard" to end his drug addiction. She insisted that Defendant had never received genuine rehabilitation treatment and believed things would be different if he did because he now admitted that the he was a drug addict.

After the sentencing hearing, the trial court denied alternative sentencing for Defendant and instead ordered a sentence of six years of incarceration to be served consecutively to the sentence that Defendant was serving for a conviction in Franklin County. Defendant filed a timely notice of appeal.

*Analysis*

Defendant argues that the trial court abused its discretion by denying alternative sentencing. The State disagrees.

When a defendant challenges the length or manner of service of a within-range sentence, this Court reviews the trial court's sentencing decision under an abuse of discretion standard with a presumption of reasonableness. *State v. Caudle*, 388 S.W.3d 273, 278-79 (Tenn. 2012); *State v. Bise*, 380 S.W.3d 682, 708 (Tenn. 2012); *see also State v. Kyto Sihapanya*, ___S.W.3d___, No. W2012-00716-SC-R11-CD, 2014 WL 2466054, at *1 (Tenn. Apr. 30, 2014) (per curiam) (noting that "the appropriate standard of review for questions related to probation and alternative sentences is abuse of discretion accompanied by a presumption of reasonableness"). This presumption applies to "within-range sentencing decisions that reflect a proper application of the purposes and principles of the Sentencing Act." *Bise*, 380 S.W.3d at 707. A trial court abuses its discretion in sentencing when it "applies an incorrect legal standard, or reaches a decision which is against logic or reasoning that causes an injustice to the party complaining." *Kyto Sihapanya*, 2014 WL 2466054, at *2 (internal quotation omitted). This deferential standard "does not permit an appellate court to substitute its judgment for that of the trial court." *Id.* (citing *Myint v. Allstate Ins. Co.*, 970 S.W.2d 920, 927 (Tenn. 1998)).

A trial court must consider all of the following when fashioning a proper sentence:

(1) any evidence received at the trial and sentencing hearing, (2) the pre-sentence report, (3) the principles of sentencing and arguments as to sentencing alternatives, (4) the nature and characteristics of the criminal conduct, (5) any mitigating or statutory enhancement factors, (6) statistical information provided by the administrative office of the courts as to sentencing practices for similar offenses in Tennessee, (7) any statement that the defendant made on his own behalf, and (8) the potential for rehabilitation or treatment.

*Kyto Sihapanya*, 2014 WL 2466054, at *1 (citing T.C.A. §§ 40-35-102, -103, -210(b)(1)-(7)).

Tennessee Code Annotated section 40-35-102(3)(C) provides that "[p]unishment shall be imposed to prevent crime and promote respect for the law by . . . [e]ncouraging effective rehabilitation of those defendants, where reasonably feasible, by promoting the use of alternative sentencing and correctional programs that elicit voluntary cooperation of defendants[.]" Tennessee Code Annotated section 40-35-104 authorizes alternative sentences, which may include a sentence of confinement that is suspended upon a term of probation or a sentence of continuous or periodic confinement in conjunction with a term of probation. T.C.A. § 40-35-104(c)(3)-(5). A condition of supervised probation may be that a defendant "[u]ndergo an alcohol and drug assessment or treatment, or both an assessment and treatment, if the court deems it appropriate and licensed treatment service is available[.]" T.C.A. § 40-35-303(d)(11)(A). Additionally, "[t]he potential or lack of potential for the rehabilitation or treatment of the defendant should be considered in determining the sentence alternative or length of a term to be imposed," and "[t]he length of a term of probation may reflect the length of a treatment or rehabilitation program in which participation is a condition of the sentence[.]" T.C.A. § 40-35-103(5).

A defendant is eligible for probation if the sentence imposed is ten years or less. T.C.A. § 40-35-303(a). Although "probation shall be automatically considered by the court as a sentencing alternative for eligible defendants," the defendant bears the burden of "establishing suitability" for probation. T.C.A. § 40-35-303(b). "This burden includes demonstrating that probation will 'subserve the ends of justice and the best interest of both the public and the defendant.'" *State v. Carter*, 254 S.W.3d 335, 347 (Tenn. 2008) (quoting *State v. Housewright*, 982 S.W.2d 354, 357 (Tenn. Crim. App. 1997)).

A defendant who is sentenced as an especially mitigated or standard offender and who has committed a Class C, D, or E felony should be "considered as a favorable candidate for alternative sentencing options," if certain conditions are met. T.C.A. § 40-35-102(5), (6)(A). The guidelines regarding favorable candidates are advisory for the sentencing court. T.C.A. § 40-35-102(6)(D).

In this case, Defendant was convicted of a Class D felony and received a six-year sentence. However, Defendant was not categorized as an especially mitigated or standard offender. Therefore, although Defendant was eligible for alternative sentencing, he was not a favorable candidate for alternative sentencing.

Tennessee Code Annotated section 40-35-103 dictates that sentences involving confinement be based on the following considerations:

(A) Confinement is necessary to protect society by restraining a defendant who has a long history of criminal conduct;

(B) Confinement is necessary to avoid depreciating the seriousness of the offense or confinement is particularly suited to provide an effective deterrence to others likely to commit similar offenses; or

(C) Measures less restrictive than confinement have frequently or recently been applied unsuccessfully to the defendant[.]

T.C.A. § 40-35-103(1). Additionally, the sentence imposed "should be no greater than that deserved for the offense committed" and also "should be the least severe measure necessary to achieve the purposes for which the sentence is imposed." T.C.A. § 40-35-103(2), (4).

In this case, the trial court found Defendant to be a multiple offender, denied alternative sentencing for Defendant, and ordered six years of confinement instead. The sentencing range for Defendant's theft conviction was four to eight years. *See* T.C.A. § 40-35-112(b)(4). The sentencing judge expressly considered the factors set forth in Tennessee Code Annotated section 40-35-210 and the sentencing principles in Tennessee Code Annotated sections 40-35-102 and 103. The sentencing judge stated that he also considered the presentence report, the testimonies presented at the sentencing hearing, Defendant's statements to the court, and Defendant's amenability to rehabilitation. The sentencing judge recounted Defendant's considerable criminal history, which consisted primarily of probated misdemeanors, and determined that he had "a long history of criminal conduct." The sentencing judge noted that Defendant had previously been placed on release status "multiple times" and had committed crimes while on release status. The sentencing judge also noted that the offense in this case was committed less than a month after Defendant was sentenced to Community Corrections in Franklin County.

The sentencing judge considered enhancement and mitigating factors. *See* T.C.A. § 40-35-113, -114. The only mitigating factor was that the offense did not cause or threaten serious bodily injury. *See* T.C.A. § 40-35-113(1). For enhancement factors, the

sentencing judge found that Defendant has a previous history of criminal convictions beyond those necessary for his offender classification and also found that he was on release status at the time of the offense. *See* T.C.A. § 40-35-114(1), (13)(E).

After careful review of the record, we conclude that the trial court did not abuse its discretion in sentencing Defendant to confinement. We disagree with Defendant's contention that the sentencing judge misapprehended the drug-related nature of Defendant's criminal history and disproportionately relied upon it rather than considering Defendant's potential for rehabilitation and the benefits of substance abuse treatment. The sentencing judge properly considered all of the sentencing factors for alternative sentencing and confinement, as well as the purposes and principles of our sentencing statutes. Defendant's criminal history is significant, and he has repeatedly demonstrated that he cannot comply with the terms and conditions of release. When the Franklin County Circuit Court sentenced Defendant to Community Corrections the month before he committed the present offense, completion of the "present rehabilitative program that he is doing" was a special condition of his alternative sentence. Therefore, Defendant has failed to comply with previous court-ordered rehabilitation. We discern no error in the judgment of the trial court.

*Conclusion*

For the foregoing reasons, the judgment of the trial court is affirmed.

_____
TIMOTHY L. EASTER, JUDGE